# IN THE SUPREME COURT OF IOWA

No. 09–1670

Filed November 18, 2011

**CITY OF RIVERDALE, IOWA,**

 Appellant,

vs.

**ALLEN DIERCKS, MARIE RANDOL,** and **TAMMIE PICTON,**

 Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

City appeals award of citizens' attorney fees in action to obtain security camera videotape under Iowa's Freedom of Information Act, Iowa Code chapter 22. **DECISION OF COURT OF APPEALS VACATED, DISTRICT COURT FEE AWARD AFFIRMED, AND CASE REMANDED.**

Michael J. Motto of Bush, Motto, Creen, Koury & Halligan, P.L.C., Davenport, for appellant.

Michael J. Meloy of Koos and Meloy, Bettendorf, for appellees.

**WATERMAN, Justice.**

"Sunlight is said to be the best of disinfectants." Justice Louis Brandeis, *What Publicity Can Do*, Harper's Weekly, Dec. 20, 1913. This concept animates state and federal laws allowing public scrutiny of government records—shining the light of day on the actions of our public officials deters misconduct that thrives in darkness. But open records laws are complex, replete with valid exceptions, and subject to abuse by serial requesters. Citizens and public officials sometimes must turn to the courts to resolve disputes over access to information. Statutory attorney-fee awards motivate lawyers to step up and fight city hall on behalf of residents whose elected officials refuse requests for disclosure. That happened in this case, which presents our court with the opportunity to clarify the standards for awarding attorney fees under our state Freedom of Information Act, Iowa Code chapter 22 (2009).

The plaintiff, City of Riverdale, Iowa, spent sixteen months in district court litigating whether defendants-counterclaimants, Dr. Allen Diercks, Marie Randol, and Tammie Picton, were entitled to view security camera video of a confrontation with Mayor Jeffrey Grindle over earlier records requests at the city clerk's counter. The mayor had been advised in writing by the City's lead counsel that video from the city hall security cameras was subject to disclosure, and the mayor allowed a newspaper reporter to watch the video at issue. The mayor nevertheless balked at turning the video over to defendants after the security firm warned doing so could compromise safety and a junior attorney advised filing a declaratory judgment action. The defendants ultimately won at trial, and the district court awarded them attorney fees of $64,732. Riverdale appealed the fee award only, without challenging the order to turn over a copy of the videotape. The court of appeals reversed and vacated the fee

award because the "district court made no finding of bad faith on the part of the City."

On further review, we hold section 22.10(3)(*c*) requires Riverdale to pay defendants' reasonable attorney fees because the district court found the City violated the statute by withholding the video and implicitly rejected the City's defense of a "good-faith, reasonable delay" under section 22.8(4). The district court on this record did not err in awarding fees despite the City's reliance on advice of counsel. We conclude the district court did not abuse its discretion in fixing the amount of fees or denying deposition costs or expert fees. Accordingly, we vacate the decision of the court of appeals, affirm the district court's fee award, and remand for an award of defendants' reasonable appellate attorney fees.

## I. Background Facts and Proceedings.

Riverdale, a municipality with approximately 600 residents, is home to Alcoa's mile-long aluminum sheet rolling mill along U.S. Highway 67 and the sprawling east campus of Scott Community College. Riverdale's eastern border is the Mississippi River, and it is surrounded on the remaining sides by the City of Bettendorf. The parties in this eastern Iowa river community have a litigious history that predates the attorney-fee dispute we decide today. Indeed, these parties repeatedly have squared off in court, litigating disputes under chapter 22 in seven earlier lawsuits. Between November 2006 and August 2008, Diercks made fifty-five to sixty open records requests to Riverdale, Picton made sixty to sixty-five requests, and Randol made eighty to ninety. The three of them accounted for eighty percent of all the open records requests made to this city. The City had honored approximately 190 of their requests for records.

One lawsuit by Diercks alleging violations of chapter 22's open meeting notification requirements resulted in payments by Riverdale and its insurer of $9000 for Diercks' legal fees. The *Quad-City Times* ran a story about the settlement in February 2008 in which reporter Tom Saul noted Diercks "said the city has agreed to 're-do' actions taken by its Water Tower Park Committee and abide by the state open records law." A correction on March 1 stated, "While the city agreed to pay $9000 to settle the action, it admitted no wrongdoing and acknowledged no liability for any actions alleged by Diercks. It also was not required to take any other actions."

Meanwhile, Riverdale contracted with Per Mar Security Services for the installation of video security cameras at city hall. Grindle testified the cameras were for "the protection of the property, protection of the records, [and] protection of the [two] city clerks." Vandalism on the exterior grounds had motivated installation of the security cameras. The cameras were operational by March 2008. Grindle asked City Attorney Steve Hunter to provide a legal opinion concerning the video and audio security system in city hall. Hunter responded with a three-page letter dated March 20 that predicted the City would receive open records requests to view the security camera video recordings and opined that the recordings must be produced if requested:

> Finally, it is likely Riverdale will receive an open records request to review the recordings. The recordings, if preserved in some format, are a public record and thus must be produced if requested. If Riverdale does not preserve the recordings, then there will be nothing to produce. You should carefully review with the security company how the recordings are maintained. Even if Riverdale does not have possession of the recordings but the security company maintains them as an agent for Riverdale, the recordings are still owned by Riverdale and thus subject to an open records request.

Hunter was prescient.

The confrontation that led to this lawsuit occurred on April 24 and was recorded in both sound and video by the security camera trained at the city clerk's counter within city hall. Diercks and Picton were at the counter picking up their previously requested records when Grindle approached and urged them to mediate their numerous pending requests. By all accounts, the discussion became heated. Upon leaving, Diercks contacted the Scott County Sheriff's Department to file a complaint against Grindle "for harassment by a public official." Sergeant Charles Muhs came to city hall where he viewed the video. His incident report describes what he saw:

> I viewed the tape, which shows Allen [Diercks] and Tammie [Picton] coming in, asking for records, and having Theresa [Ralfs, city clerk] make copies. Jeff [Mayor Grindle] comes back and forth to the counter. He says something about mediation and it appears that Allen doesn't want to talk about it. Other comments are exchanged. Things start to get heated. Jeff finally tells Allen and Tammie to leave because of the noise level. They at first refuse, but finally do so.

Muhs' description is somewhat understated. Grindle testified that Diercks called him a "liar" and accused him of "breaking the law." Grindle said he repeatedly returned to the counter to try to "bring this to an end . . . the persistent hostility." Diercks and Grindle poked fingers at each other; Grindle is six feet five and 330 pounds. Voices got loud and louder until Diercks and Picton left at Grindle's insistence "because of the yelling." Grindle told Muhs that Diercks and Picton "were constantly coming in and being a nuisance because they knew they could."

Within several days, the *Quad-City Times* reporter, Saul, contacted Grindle. Saul had heard about the incident from Diercks. Grindle met with Saul and played the video for him to defend his actions in light of

"false accusations in the newspaper" from earlier problems with Diercks. Grindle did not consult with the city attorney before playing the video for Saul. He offered Saul a copy of the video; Saul declined. Grindle later testified he did not expect the reporter to keep the matter private. He was advised by the City's counsel not to show the video to others[1] and acknowledged it was a mistake to show it to Saul in light of the City's litigation position that the video was confidential. This mistake would prove consequential.

On April 29, Diercks made the first of several written and oral requests by defendants for a copy of the sound and video recording of the April 24 confrontation. Riverdale and its counsel initially decided to produce the video. Indeed, a dubbed copy of the video recording was left with the receptionist at Hunter's law firm for Diercks to retrieve. Before Diercks picked up the video, however, the mayor asked counsel to check with Per Mar whether the disclosure would violate any proprietary information. A junior associate in Hunter's firm contacted Per Mar and was advised that, although disclosure would not reveal any proprietary information, it could compromise security. Accordingly, the associate attorney advised Grindle to withhold disclosure and file a declaratory judgment action to determine the City's obligations under chapter 22. Sixteen months of litigation ensued before the district court ordered Riverdale to turn over the video to defendants.

The City initially filed a petition for declaratory judgment and injunctive relief against Diercks alone. Subsequent amendments added Randol and Picton in response to their respective requests for this video

---

[1]The mayor had also made the video available to a city councilman, the associate attorney for the City, and Sergeant Muhs.

and others.[2]  The City alleged in "March 2008, Riverdale installed an audio and video surveillance system at city hall because Riverdale officials were concerned about the safety of its employees, visitors, property and infrastructure (the 'Security System')."  The City sought a declaration that the video recordings requested by defendants, particularly the recording of the April 24 confrontation, were confidential under Iowa Code section 22.7(50).[3]  The City's pleadings were supported by a resolution of the city council declaring records relating to its security system to be confidential, and by the affidavit of Bradley Toliver, Per Mar's general manager for electronic security, stating without elaboration that release of the video recording of the April 24 confrontation would jeopardize security.

---

[2]The defendants also requested video of several later city hall visits.

[3]Iowa Code section 22.7(50) provides the following records shall be kept confidential:

> *Information concerning security procedures* or emergency preparedness information developed and maintained by a government body for the protection of governmental employees, visitors to the government body, persons in the care, custody, or under the control of the government body, or property under the jurisdiction of the government body, *if disclosure could reasonably be expected to jeopardize such employees, visitors, persons, or property.*
>
> *a.* Such information includes but is not limited to information directly related to vulnerability assessments; information contained in records relating to security measures such as security and response plans, security codes and combinations, passwords, restricted area passes, keys, and security or response procedures; emergency response protocols; and information *contained in records that if disclosed would significantly increase the vulnerability of critical physical systems or infrastructures of a government body to attack.*
>
> *b.* This subsection shall only apply to information held by a government body that has adopted a rule or policy identifying the specific records or class of records to which this subsection applies and which is contained in such a record.

(Emphasis added.)

The defendants' answers denied the requested video was confidential under section 22.7(50). Defendants counterclaimed, seeking an order compelling disclosure of the video and payment of all costs and reasonable attorney fees. Their counterclaim incorporated by reference Hunter's March 20 legal opinion that the video was subject to disclosure. Defendants' counterclaim specifically alleged, "Mayor Grindle's actions in initiating of [sic] filing the lawsuit against Dr. Diercks, was done in bad faith and for the purpose of avoiding public embarrassment and potential civil litigation against Grindle by Dr. Diercks." Riverdale's answer to the counterclaim denied bad faith and alleged as affirmative defenses compliance with chapter 22 and reliance on advice of counsel.

Riverdale moved for summary judgment, which the district court denied on June 2, 2009, finding a factual dispute "whether the city is acting reasonably and in good faith in its conclusion that those video recordings are confidential."

The parties took depositions of thirteen witnesses before trial. Eighteen witnesses testified at trial, including out-of-state experts for each side. Riverdale was represented by two trial lawyers with combined experience exceeding sixty years. Defendants were represented by Michael Meloy with thirty years experience in municipal litigation. The bench trial was completed in three days in August 2009. Both sides retained outside security experts who gave conflicting opinions on whether the disclosure of video recordings from the security cameras would compromise security. The City's experts testified that disclosure of the April 24 video would compromise security because a viewer could determine the area covered by the camera and thereby ascertain security "blind spots." The expert for the defendants testified releasing the videotape would not compromise security. On October 9, 2009, the

district court entered a nine-page ruling in favor of defendants, concluding the video recordings were public records and were not confidential under section 22.7(50). The ruling stated:

> The court has viewed the videos provided by the parties and finds that the plaintiff has failed to show that the release of video tapes from still cameras located in and outside of the building would "significantly increase the vulnerability of physical systems or infrastructures" of the City of Riverdale. The videos do not reveal any information regarding any of the security systems in place at city hall or any information regarding the infrastructure workings of the city government or its employees. The employees and physical plant of the City are no more vulnerable to attack if these are revealed than they already are by the lack of complete coverage in all areas of the building and grounds.

> Further, as to the video of April 24, 2008, the City has waived the confidentiality, if there was any, of that tape by releasing it to third parties, ie: the news media reporter, a staff attorney in the city attorney's office and a councilman.

> Diercks, Randol and Picton argue that this lawsuit was brought in bad faith and that they are therefore entitled to reimbursement for attorney fees. The City argues that they were merely following the procedure found in Iowa Code Chapter 22 and the legal advice of their attorney.

> There is no doubt in the Court's mind that Mayor of Riverdale considered the counter-plaintiff's requests for records frivolous and a nuisance. He publicly stated so in a city council meeting. The April 24, 2008 video is clear and convincing evidence of the Mayor's lack of tolerance for public record requests of both Dr. Diercks and Mrs. Picton.

The district court ordered the City to disclose the video recordings to defendant and sustained the defendants' counterclaim. The ruling ordered the City to pay defendants' reasonable attorney fees. Neither side filed a motion to enlarge or amend the court's October 9 findings under Iowa Rule of Civil Procedure 1.904(2).

On October 27, defendants filed an application for costs and attorneys fees supported by Meloy's affidavit and billing records. Defendants sought reimbursement for $71,225 in fees and $5904 in deposition costs. On November 13, defendants amended their

application to add a claim for reimbursement of their expert witness fees of $2736 for consulting time, deposition testimony, and trial testimony. On November 19, the City filed a resistance to the fee application. The City argued no fees were recoverable as a matter of law because the court had made no finding the City acted in bad faith and the ten-day deadline for defendants to move to enlarge the court's findings had expired and because the court found Riverdale had relied on the advice of counsel. The City conceded Meloy's $175 hourly rate was reasonable, but contended the 407 hours he spent was excessive. The City also argued deposition expenses should not be awarded because the depositions were not offered or admitted at trial and none of the expert witness fees were recoverable as costs. Defendants responded that the district court sustained their counterclaim, therefore the finding of bad faith is implicit in the ruling. Defendants further argued that the limitations on recovery of deposition costs in the Iowa Rules of Civil Procedure were superseded by Iowa Code section 22.10(3)(*c*).

On November 18, the court conducted a contested hearing on the fee application. The district court's ruling on the fee application, filed November 30, stated:

> The Court finds that it did sustain the Defendants' counterclaim. *The Court, however, did not make a specific finding of bad faith.* In fact, the Court did note in its order that the Petition was filed at the direction of the attorney representing the City.

(Emphasis added.) The November 30 ruling stated, "When a custodian of public documents brings a declaratory action in good faith to determine whether documents are subject to disclosure, it should not face the sanction of having to pay attorneys fees"—a direct quote from *Des Moines Independent Community School District v. Des Moines Register & Tribune*

*Co.*, 487 N.W.2d 666, 671 (Iowa 1992), which the district court cited. In the same paragraph, the district court stated,

> Iowa Code section 22.8(4) expressly provides: Good-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation of this chapter if the purpose of the delay is any of the following: . . . To determine whether the government record in question is a public record, or confidential record.

The November 30 ruling, after discussing section 22.10 governing fee awards and defenses, continued as follows:

> The Court after hearing the testimony and reviewing evidence found that the video portions were public records as well and ordered that they be provided to the parties. Therefore, the court found a violation and sustained the counterclaim for an injunction. However, the custodian also did not release the video portion due to the conflicting advice given by counsel and the advice to file the declaratory judgment action. The defendants were however forced to defend this lawsuit not only as to the audio portions but the video portions as well. *The court finds that this is one of the cases where based on the specific facts attorneys fees for prosecuting the counterclaim should be assessed due to the violation of the act.* However, the fees are assessed to the governmental entity and not the Mayor or City Clerk individually.

(Emphasis added.)

The court ordered Riverdale to pay defendants' attorney fees totaling $64,732. The court accepted Meloy's $175 hourly rate, but disallowed reimbursement for 37.1 hours of posttrial work the court found unnecessary and declined to award any deposition expenses because the depositions were not used at trial. The court limited the expert fee to the $150 allowed for statutory court costs. Defendants had sought a total of $77,129 in fees and litigation expenses; the court disallowed $15,133.

On December 7, defendants moved to enlarge or amend the ruling awarding fees to correct certain typographical and factual errors and to

recognize that the counterclaim sustained by the court included the allegation that "Mayor Grindle's actions in initiating filing of the lawsuit against Dr. Diercks *was done in bad faith"* and that an affirmative defense to Riverdale's declaratory judgment action alleged "Riverdale's claim of confidentiality of the videos to Dr. Diercks, Marie Randol, and Tammie Picton has been *made in bad faith.*" (Emphasis added.) On December 16, the City filed a response confirming that certain errors should be corrected, but resisting any clarification to support a fee award. On December 29, the district court entered a ruling that made the agreed corrections and noted the bad-faith allegations in defendants' affirmative defense and counterclaim. The district court did not retreat from its fee award. At no time did the City file a motion under Iowa Rule of Civil Procedure 1.904(2) to enlarge or amend any of the district court rulings to find there was a "good-faith, reasonable delay" by the City in turning over the video.

The City appealed, and defendants cross-appealed. A three-judge panel of the court of appeals reversed and vacated the fee award, stating:

> The district court made no finding of bad faith on the part of the City, finding only that it failed to turn over the records. Absent a finding of bad faith on the part of the City and violation of chapter 22, it should not have been ordered to pay the attorney fees for the defendants. *See* Iowa Code § 22.10(3) (requiring a finding the lawful custodian violated chapter 22 before awarding attorney fees under 22.10(3)(*c*)).

We granted defendants' application for further review.

## II.  Standard of Review.

Riverdale filed its declaratory judgment action in equity, and both sides contend we should apply de novo review. *Gannon v. Bd. of Regents*, 692 N.W.2d 31, 37 (Iowa 2005) ("Customarily, our review of an action brought under chapter 22 would be de novo, the nature of the action

being that of mandamus, triable in equity." (internal quotation marks omitted)); *see also* Iowa Code § 22.5 ("The provisions of this chapter and all rights of persons under this chapter may be enforced by mandamus or injunction, whether or not any other remedy is also available."). Defendants, however, counterclaimed for attorney fees; the district court noted the counterclaim was "tried as a 'bad faith' case." The court of appeals in turn concluded "this action was tried as a law action. Consequently, our review is for correction of errors at law. Iowa R. App. P. 6.907." We agree with the court of appeals.

"Our review of actions for declaratory judgment depends upon how the action was tried to the district court." *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). The fact the action was filed on the equity docket does not control our review. *See id.* at 413. The district court ruled on numerous objections during this three-day bench trial. "Normally, this is the 'hallmark of a law trial' . . . ." *Id.* at 414 n.6 (quoting *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980); *accord Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010) (noting litmus test for determining if action is tried at law is whether the trial court ruled on evidentiary objections). The City moved for summary judgment, and each side filed other motions ruled upon by the district court. This is another indication the case was tried as a law action. *Van Sloun*, 779 N.W.2d at 178 (citing *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982)).

Accordingly, we will review for correction of errors at law the district court's ruling defendants were entitled to recover attorney fees. We are bound by the district court's findings of fact if supported by substantial evidence. Iowa R. App. P. 6.904(3)(*a*).

We will review the amount of attorney fees awarded for abuse of discretion. *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005).

**III. Did the District Court Err in Awarding Attorney Fees to the Prevailing Defendants Under Iowa Code Chapter 22?**

We must decide whether the district court erred in ordering Riverdale to pay the prevailing defendants' attorney fees under Iowa Code chapter 22. Riverdale contends the district court's failure to expressly find it acted in bad faith—and indeed the court's express recognition it "did not make a specific finding of bad faith"—is fatal to the fee recovery. Riverdale further contends its reliance on advice of counsel precludes the fee award as a matter of law. We disagree with Riverdale and hold on this record whether the City in good faith, reasonably delayed turning over the video was a question of fact for the district court to decide in the nonjury trial. As we explain below, the district court necessarily rejected the City's "good-faith, reasonable delay" defense by finding Riverdale violated chapter 22. Defendants, as the successful parties, therefore, are entitled to recover their reasonable fees without an express finding the City acted in bad faith.

We begin our analysis with an overview of the purpose of Iowa's open records law and the importance of fee awards as an incentive for private enforcement of the public disclosure obligations of government officials. We next analyze the statute's provision for mandatory fee awards to prevailing parties and the safe harbor for officials who in good faith litigate disclosure issues on advice of counsel. We then examine whether the district court erred in awarding fees based on the record developed at trial.

**A. The Purpose of Iowa's Freedom of Information Act and Fee Awards to Prevailing Parties.** Iowa Code chapter 22 is our state's freedom of information statute. *Rathmann v. Bd. of Dirs.*, 580 N.W.2d 773, 777 (Iowa 1998). "The purpose of the statute is 'to open the doors of government to public scrutiny [and] to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.'" *Id.* (quoting *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981)). "Accordingly, there is a presumption of openness and disclosure under this chapter." *Gabrilson v. Flynn*, 554 N.W.2d 267, 271 (Iowa 1996). "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability." *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999).

Chapter 22 provides for the recovery of attorney fees by prevailing parties who are denied access to public records in violation of the Act. Iowa Code § 22.10(3)(*c*). The reason an Iowa statute entitles successful litigants to attorney fees "'is to ensure that private citizens can afford to pursue the legal actions necessary to advance the public interest vindicated by the policies'" of the statute. *Lynch v. City of Des Moines*, 464 N.W.2d 236, 239 (Iowa 1990) (quoting *Ayala v. Ctr. Line, Inc.*, 415 N.W.2d 603, 605 (Iowa 1987)); *see also Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977) (Congress included an attorney fee provision in the Federal Freedom for Information Act "to encourage the average person, who would ordinarily find the barriers of court costs and attorney fees insurmountable, to pursue legitimate FOIA actions."), *overruled on other grounds by Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998).

This case aptly illustrates the need for attorney-fee awards to motivate private attorneys to represent citizens who are improperly denied access to public records. The defendants were forced to litigate against their home city for sixteen months before obtaining the video recording of their confrontation with the mayor.

Against this backdrop, we will now examine the provisions of chapter 22 governing attorney-fee awards.

**B. The Governing Statutory Provisions for Mandatory Attorney-Fee Awards and Safe Harbors.** Iowa Code section 22.10 is entitled "Civil Enforcement" and authorizes civil suits by citizens to enforce the statute, *see* Iowa Code § 22.10(1), as well as declaratory judgment actions by the public records custodians. *Id.* § 22.10(4). Once the citizen shows the city denied his or her request to access government records, the burden shifts to the city to demonstrate it complied with the chapter's requirements. *Id.* § 22.10(2).[4] Section 22.10(3)(*c*) requires the court to award reasonable attorney fees to the prevailing citizen who proves a violation of the chapter:

> Upon a finding by a preponderance of the evidence that a lawful custodian has violated any provision of this chapter, a court:
>
> . . . .
>
> *c.* Shall order the payment of all costs and reasonable attorney fees, including appellate attorney fees, to any

---

[4]Section 22.10(2) provides:

Once a party seeking judicial enforcement of this chapter demonstrates to the court that the defendant is subject to the requirements of this chapter, that the records in question are government records, and that the defendant refused to make those government records available for examination and copying by the plaintiff, *the burden of going forward shall be on the defendant to demonstrate compliance with the requirements of this chapter.*

(Emphasis added.)

plaintiff successfully establishing a violation of this chapter in the action brought under this section.

*See Des Moines Indep.,* 487 N.W.2d at 671 ("Iowa Code section 22.10(3)(*c*) provides that a district court shall order the payment of reasonable attorney fees to a plaintiff establishing a violation of chapter 22."). A counterclaimant may recover fees in a proper case. *Id.* ("The question does not turn on which party is the first to reach the courthouse."). In *Des Moines Independent,* we affirmed a district court order denying a counterclaimant's fee request because the record supported "no finding other than that the [school] district acted in good faith." *Id.* We stated, "When a custodian of public documents brings a declaratory action in good faith to determine whether documents are subject to disclosure, it should not face the sanction of having to pay attorney fees." *Id.* Our decision today presents our first opportunity to clarify the standards for awarding attorney fees under chapter 22.

Riverdale invoked a statutory safe harbor for government bodies filing declaratory judgment actions in good faith. Section 22.8(4) provides:

> *Good-faith, reasonable delay* by a lawful custodian in permitting the examination and copying of a government record *is not a violation of this chapter* if the purpose of the delay is any of the following:
>
>     *a.* To seek an injunction under this section.
>
>     . . . .
>
>     *c.* To determine whether the government record in question is a public record, or confidential record.
>
>     . . . .
>
>     *e.* Actions for injunctions under this section may be brought by the lawful custodian of a government record . . . .

(Emphasis added.)

We must read sections 22.8(4) and 22.10(3)(*c*) together.[5] To recover fees under section 22.10(3)(*c*), the requesting party must establish the government body violated the Act; section 22.8(4) in turn provides the government body does not violate the Act if it reasonably delays the citizen's request by seeking a declaratory judgment in good faith. Accordingly, a finding of a violation of chapter 22 is inconsistent with a finding of a good-faith, reasonable delay.

The City agreed the video recordings of security cameras at city hall are public records. The City bore the burden of proving the recordings were confidential within the meaning of an exception to disclosure—section 22.7(50). *See Clymer*, 601 N.W.2d at 45 ("[O]ne seeking the protection of one of the statute's exemptions bears the burden of demonstrating [its] applicability."); *see also* Iowa Code § 22.10(2) (burden on party withholding government records to demonstrate compliance with chapter 22); Iowa R. App. P. 6.904(3)(*e*) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."). The district court ruled against the City by finding the video was not confidential and ordering that it be turned over to defendants and by finding the City violated chapter 22. In this setting, defendants did not require an express finding of bad faith to recover fees from the City under section 22.10(3)(*c*). Rather, the City needed to prove a "good-faith, reasonable delay" under section 22.8(4) to avoid a violation of the chapter and resulting obligation to pay fees.

---

[5]Because the district court did not order the mayor to pay fees personally, we do not address the defenses against individual liability in section 22.10(3)(*b*). We note that, if an individual custodian establishes a defense to personal liability under section 22.10(3)(*b*), the City remains liable for fees under section 22.10(3)(*c*).

**C. The District Court Implicitly Rejected Riverdale's "Good-Faith, Reasonable Delay" Defense.** Our review is complicated because the district court made no express finding rejecting Riverdale's defense of a "good-faith, reasonable delay" under section 22.8(4), yet expressly noted it "made no specific finding of bad faith." We encourage district courts adjudicating attorney-fee claims under chapter 22 to make express findings whether a delay was reasonable and in good faith. We must decide whether this ambiguity or gap in the record requires reversal of the fee award. We hold the district court's finding Riverdale violated chapter 22 is supported by substantial evidence and is sufficient to affirm the fee award without an express finding the City acted in bad faith.

The district court unquestionably awarded defendants attorney fees after finding Riverdale violated chapter 22 by withholding the video from defendants. It did so after noting our caselaw holding that a records custodian who brings a declaratory judgment action in good faith should not face the sanction of attorney fees, after noting section 22.8(4) provides the statute is not violated by a "good-faith, reasonable delay," and after noting the City's advice-of-counsel defense. The district court made no finding the City acted in good faith or that the delay was reasonable. As noted above, a finding the act was violated precludes a finding the same conduct constituted a good-faith, reasonable delay. Under these circumstances, we must assume the district court implicitly rejected the City's good-faith defense. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) ("[W]e assume the district court rejected each defense to a claim on its merits, even though the district court did not address each defense in its ruling."). Similarly, we assume the district court implicitly found the facts necessary to support the fee award,

including that the City did not litigate in good faith. *Id.* at 540 ("[T]his assumption is not utilized as a means to preserve error, but only to guide our review of an incomplete or sparse record . . . .").

This assumption is particularly appropriate because the City failed to file a motion under Iowa Rule of Civil Procedure 1.904(2) to enlarge or amend the findings to specifically decide whether it established a "good-faith, reasonable delay" under section 22.8(4). *See Bankers Trust Co. v. Fidata Trust Co. N.Y.*, 452 N.W.2d 411, 413 (Iowa 1990) (presuming court decided facts necessary to support decision when it failed to explain issue raised and no enlargement of ruling sought); *accord State v. Boelman*, 330 N.W.2d 794, 795 (Iowa 1983) ("[W]e presume the court decided the facts necessary to support its decision in the State's favor."); *City of Des Moines v. Huff*, 232 N.W.2d 574, 576 (Iowa 1975) ("In review of any case tried to the court at law, findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment.").

Appellate courts in other jurisdictions have affirmed attorney-fee awards based upon implied findings of bad faith. *See, e.g.*, *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) ("Moreover, even if we assume that a finding of bad faith is required, we conclude that the district court's order implies a finding of bad faith."); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985) (declining to remand "for an explicit finding of bad faith when it is clearly evident from the district court's expressions and from the record as a whole, that the district court found, albeit implicitly, Cravath's conduct to be in bad faith").

We conclude the district court's attorney-fee award can be upheld based on its implicit rejection of Riverdale's good-faith, reasonable delay defense without an express finding the City acted in bad faith.

**D. Did the District Court Err in Rejecting Riverdale's Advice-of-Counsel Defense?** We must now determine whether the record supports the district court's implicit rejection of Riverdale's good-faith defense notwithstanding the City's reliance on advice of legal counsel. To resolve that issue we must decide whether the City established a "good-faith, reasonable delay" as a matter of law under section 22.8(4). "Good faith" is not defined in chapter 22. " 'In the absence of legislative definition, we give words their ordinary meaning.' " *Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011) (quoting *State v. Hearn*, 797 N.W.2d 577, 583 (Iowa 2011)). We have not previously defined the term "good faith" as used in section 22.8(4), but we have addressed the meaning of that term in various other Iowa statutes that provide immunity or allow attorney-fee awards. We surveyed such decisions in *Sieg Co. v. Kelly*, 568 N.W.2d 794, 804–05 (Iowa 1997). There, we noted that, whether "good faith" in a particular statute is viewed objectively or subjectively depends on the context and other terms with which it is used:

> The term "good faith" has various meanings; sometimes it is viewed objectively and at other times, subjectively. *Compare Aalbers v. Iowa Dep't of Job Serv.*, 431 N.W.2d 330, 335–36 (Iowa 1988) (holding "good-faith belief" measured by *objective* test in unemployment compensation context), *with Garvis v. Scholten*, 492 N.W.2d 402, 404 (Iowa 1992) (holding term "good faith" in Iowa Code section 232.72 "rests on a defendant's subjective honest belief"), *Meyers v. Canutt*, 242 Iowa 692, 698, 46 N.W.2d 72, 76 (1951) (holding "good faith" required for adverse possession means "the actual, existing state of mind" and "freedom from a design to defraud"), *In re Marriage of Voyek*, 491 N.W.2d 189, 190–91 (Iowa App. 1992) (interpreting "good faith" as used in Iowa Code section 589.1(2) as referring to actual intent), *and* Iowa Code § 554.1201(19) (defining "good faith" under article 2 of Uniform Commercial Code as "honesty in fact in the conduct

or transaction concerned"). We think "good faith" should be defined with a subjective focus for purposes of determining a party's right to attorney fees under section 490.1331 for two reasons. First, the objective reasonableness of a party's conduct is adequately addressed when considering whether the party acted arbitrarily. *See State v. Ahitow,* 544 N.W.2d 270, 273 (Iowa 1996) ("We do not interpret statutes in a way that makes portions of them irrelevant or redundant."). Second, a subjective focus is more consistent with the common, ordinary meaning of the phrase "good faith." *See State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997) ("In the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning."); *Security State Bank,* 554 N.W.2d at 894 (giving word "arbitrary" in section 490.1331 its ordinary meaning). The following dictionary definition of "good faith" encompasses the essential elements of that term for purposes of chapter 490: "In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." *Black's Law Dictionary* 693; *accord Webster's Third New International Dictionary* 978 (defining "good faith" as "a state of mind indicating honesty and lawfulness of purpose . . . : belief that one's conduct is not unconscionable or that known circumstances do not require further investigation: absence of fraud, deceit, collusion, or gross negligence").

*Sieg Co.*, 568 N.W.2d at 804–05. Applying the *Sieg Co.* analysis here, we note it is significant that "good faith" is paired with "reasonable" in section 22.8(4) ("good-faith, reasonable delay"). Because whether a delay is "reasonable" is determined objectively, we conclude the City's "good faith" should be viewed subjectively under *Sieg Co.* Thus, the trier of fact should determine whether the City had an honest motive, the subjective component, as well as an objectively reasonable basis for its decision to withhold the video from defendants pending the outcome of its declaratory judgment action. There is no indication the district court misapplied this standard.

Riverdale contends its reliance on advice of counsel establishes its defense of "good-faith, reasonable delay" as a matter of law. We disagree. Under Iowa law, advice of counsel does not automatically establish good

faith, but it is a factor to consider in determining whether a party acted in good or bad faith. *See, e.g., Ferris v. Emp'rs Mut. Cas. Co.*, 255 Iowa 511, 518, 122 N.W.2d 263, 267 (1963) (reversing bad-faith judgment against insurer that relied on attorney who was "able and long experienced in the handling of this class of cases"); *Schnathorst v. Williams*, 240 Iowa 561, 579, 36 N.W.2d 739, 749 (1949) (holding advice of counsel does not per se immunize a person from a malicious prosecution suit); *Ahrens v. Ahrens*, 386 N.W.2d 536, 538 (Iowa Ct. App. 1986) (noting that, in a malicious prosecution case, "[t]he fact that the proceedings were initiated under the advice of counsel is a factor to be considered" in determining bad faith (quoting Restatement (Second) of Torts § 668, cmt. *h*, at 441 (1977))); s*ee also Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 174 (Okla. 2000) (" 'The advice of counsel is but one factor to be considered in deciding whether the carrier's reason for denying a claim was arguably reasonable.' " (quoting *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 282 (5th Cir. 1988))); 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 203:33, at 203–53 (2008) ("[R]eliance on the advice of counsel is not absolute proof of good faith, but rather it constitutes some evidence of good faith."); Stephen S. Ashley, *Bad Faith Action Liability & Damages* § 7:13, at 7–46 (2d ed. 1997) ("The great majority of cases that have alluded to the advice of counsel have merely held that such advice is a factor the jury may consider when deciding whether the insurer acted in bad faith.").

We conclude the district court did not err in rejecting the City's advice-of-counsel defense on the record made at trial. First, as the district court noted, the City received conflicting advice. The city attorney, Hunter (the senior partner), provided the mayor with a written opinion advising that security camera recordings "are a public record

and, thus, must be produced if requested." Consistent with that advice, when Diercks first requested the video of the April 24 confrontation, the City made a copy of the video and left it in an envelope for Diercks to retrieve at Hunter's law office. But, the mayor prevented the disclosure by directing the associate attorney to inquire with Per Mar as to whether the video's disclosure would create a security issue.

We need not decide whether Riverdale could plausibly argue the security video was confidential under section 22.7(50) because the mayor waived confidentiality. The district court found Riverdale waived any confidentiality by disclosing the video to Saul,[6] and this finding is supported by substantial evidence. Mayor Grindle testified he did not expect Saul to keep the matter private. He knew Saul had published other stories about Riverdale's litigation with Diercks. Grindle later acknowledged it was a mistake to play the video for Saul and that doing so was inconsistent with the City's assertion the video was confidential.

It is untenable for Riverdale to play the video for a reporter covering the dispute between the parties and yet withhold the same video from the defendants who requested it. As a federal appellate court observed:

> The selective disclosure exhibited by the government in this action is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government that the FOIA was intended to obviate.

*State ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978). We share this view. It is axiomatic that disclosure to a third party waives

---

[6]We assume without deciding that the mayor did not waive confidentiality by playing the video for a city councilman, the city attorney, or the sheriff's deputy investigating Diercks' complaint about the April 24 incident.

confidentiality. *See, e.g., State v. Demaray*, 704 N.W.2d 60, 66 (Iowa 2005) ("When [the patient] consented to the hospital's release of his medical records to [a deputy], he destroyed the confidentiality between him and his doctor by allowing the information to be communicated to a third party."); *Miller v. Cont'l Ins. Co.*, 392 N.W.2d 500, 504–05 (Iowa 1986) ("[W]e have held that voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject.").

The associate attorney testified at trial that a decision of our court allowed Riverdale to assert confidentiality and withhold the video from defendants even after the mayor played it for Saul. *See Gabrilson*, 554 N.W.2d at 271–72. That case is readily distinguishable. The plaintiff, Carolyn Gabrilson, a member of the Davenport Community School Board, opposed a performance assessment test and requested copies of the testing materials under chapter 22 through a lawsuit against Peter Flynn, the superintendent and lawful custodian. *Id.* at 269–70. She previously obtained an unauthorized copy of the test from a school secretary and gave the testing materials to a radio talk show host and other members of the media. *Id.* at 270. Her goal was to stop the district from using the test by publicizing the questions and answers to the students who would be taking it. Flynn declined to produce the testing materials to her, invoking exemptions for confidential materials in Iowa Code section 22.7(3) (trade secrets) and (19) (examinations). *Id.* at 270–71. Our court expressly rejected Gabrilson's argument that the school district waived confidentiality by disclosing the materials to select groups of children for field testing. *Id.* at 272. Field testing a student examination is a far cry from showing a videotape to a newspaper

reporter covering the dispute and expected to publish a story about it in the local newspaper.

In *Gabrilson*, we also rejected the plaintiff's argument that the school district waived confidentiality when the district secretary gave the plaintiff a copy of the test. *Id.* We noted the record indicated the secretary was never authorized to release the assessment and concluded the erroneous release did not destroy the confidential status of the documents. *Id.* Here, Mayor Grindle is Riverdale's lawful custodian and unquestionably had authority to disclose the video to Saul. *Gabrilson* fails to support Riverdale's position. Once the mayor played the video for Saul, a subsequent claim of confidentiality was not even fairly debatable. The correct legal advice should have been to produce the video to Diercks and his codefendants, rather than litigate for sixteen months. We decline to vacate the fee award on this record based on inaccurate legal advice. *See Barnes*, 11 P.3d at 174–75 (affirming bad-faith award when insurer relied on erroneous legal advice); *In re Inspection of Titan Tire*, 637 N.W.2d 115, 132–33 (Iowa 2001) (affirming contempt finding of willful disobedience of court order; rejecting defense based on mistaken legal advice that ten-day stay applied). It was for the district court as trier of fact to determine whether Riverdale established a "good-faith, reasonable delay" by relying on advice of the associate attorney.

We hold the district court did not err by rejecting Riverdale's advice-of-counsel defense. We affirm its ruling awarding defendants their reasonable attorney fees.

**IV. Did the Trial Court Abuse Its Discretion in Determining the Amount of Attorney Fees and Costs?**

We now decide whether the district court abused its discretion in fixing the amount of defendants' attorney-fee award at $64,732, while

denying reimbursement for litigation expenses. Iowa Code section 22.10(3)(*c*) directs the district court to "order the payment of all costs and reasonable attorney fees, including appellate attorney fees, to any [party] successfully establishing a violation of this chapter." "The district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *GreatAmerica Leasing Corp.*, 691 N.W.2d at 733. " 'An applicant for attorney fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount.' " *Id.* (quoting *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001)). The district court should consider several factors, including

> "the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service."

*Schaffer*, 628 N.W.2d at 24 (quoting *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990)).

Riverdale concedes that defendants' attorney Meloy's $175 hourly rate was reasonable for the area. The district court correctly approved that hourly rate. Riverdale, however, disputed whether the number of hours Meloy spent on the case was reasonable. Meloy, in turn, noted Riverdale used two different law firms and two experienced trial lawyers to prosecute its case through the three-day trial. The amount of time Meloy spent is largely attributable to the positions taken by the City. *See Lynch*, 464 N.W.2d at 240 (noting time spent to prosecute the case was increased by positions taken by the defendant city). The parties deposed thirteen witnesses before trial. Eighteen witnesses testified at trial, including experts for each side. The parties engaged in motion practice,

including summary judgment proceedings. Meloy's fee application, supported by his affidavit, sought recovery of fees totaling $71,225 (407 hours x $175). The district court awarded $64,732 in fees, $6493 less than sought, because the court reduced the fee award by 37.1 hours for work on posttrial matters the court found excessive. We conclude this reduction was within the district court's discretion. We affirm the fee award in that amount.

In addition, section 22.10(3)(*c*) expressly provides for an award of appellate attorney fees. Defendants prevail on appeal. Accordingly, on remand, the district court shall determine an award for defendants' reasonable attorney fees to be paid by the City.

Finally, we address the defendants' argument raised in their cross-appeal that the district court erred by denying reimbursement for their deposition expenses and expert witness fees. The district court limited the expert fee to the $150 allowed as taxable court costs under Iowa Code section 622.72 and denied reimbursement for the deposition expenses because the depositions were not used at trial as required by Iowa Rule of Civil Procedure 1.716. Defendants contend that the limitations governing taxable court costs do not apply to a statutory award under section 22.10(3)(*c*) for "all costs and reasonable attorney fees." We disagree. We have construed "all costs" language in other fee-shifting statutes to limit reimbursement for litigation expenses to those allowed as taxable court costs. *See, e.g.*, *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 572 (Iowa 2002) (defining "all costs" in Iowa Code section 6B.33 to mean taxable court costs; rejecting reimbursement for expert-witness fee above $150 per day); *City of Ottumwa v. Taylor*, 251 Iowa 618, 622, 102 N.W.2d 376, 380 (Iowa 1960) (rejecting argument that "all costs" in section 472.33 includes "*all* expenses

reasonably necessary in *preparation and* trial of the appeal").[7] Defendants cite no authority for construing the "all costs" language in section 22.10(3)(*c*) differently.  Accordingly, we affirm the district court's denial of defendants' litigation expenses that do not constitute taxable court costs.

### V. Disposition.

We vacate the decision of the court of appeals and affirm the district court award of trial attorney fees of $64,732 and denial of litigation expenses.  We remand for an award of defendants' reasonable appellate attorney fees to be paid by Riverdale.

Costs of this appeal shall be assessed against the City.

**DECISION OF COURT OF APPEALS VACATED, DISTRICT COURT FEE AWARD AFFIRMED, AND CASE REMANDED.**

All justices concur except Mansfield, J., who takes no part.

---

[7] *See also Landals*, 454 N.W.2d at 898 ("[C]ourt costs and reasonable attorneys fees" recoverable under Iowa Civil Rights Act section 601A.5 (now section 216.15) are limited to "those costs allowed by Iowa Rule of Civil Procedure 157(a) [now rule 1.716] and Iowa Code chapters 622 and 625.").