Rita WINGS, Appellee,

v.

Rod DUNLAP, Appellant.

No. 93–1277.

Court of Appeals of Iowa.

Nov. 28, 1994.

J. Patrick White, County Atty., and Ann Offerman, Student Legal Intern, for appellant.

Matthew Glasson of Glasson, Grove, Sole & McManus, P.C., Cedar Rapids, for appellee.

Considered by DONIELSON, C.J., CADY, J., and SCHLEGEL, Senior Judge.*

DONIELSON, Chief Judge.

This is an appeal from a case involving Iowa's open records law. Our review of this action is de novo. *Northeast Council on Substance Abuse, Inc. v. Iowa Dept. of Public Health*, 513 N.W.2d 757, 759 (Iowa 1994). Based upon our review of the parties' arguments, the record and the applicable law, we reverse the trial court's decision.

---

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

## I. FACTUAL BACKGROUND

Plaintiff Rita Wings is a resident of Johnson County, Iowa. During the time relevant to this action she served as a member of the Affirmative Action Committee of the Johnson County Democratic Central Committee. Defendant Rod Dunlap was employed as the Conservation Director for Johnson County and was the lawful custodian for the records of the Johnson County Conservation Board ("Board").

Wings was interested in the hiring practices of the Board and at its March 28, 1991, meeting she expressed concerns about job advertisements utilized by Dunlap and whether they were contrary to the county's affirmative action policy. At the close of the meeting Wings approached Dunlap for the purpose of establishing a time when she could examine records at his office. Since Dunlap was going to be leaving town for Easter weekend, he asked Wings to call him the following Tuesday or Wednesday to make an appointment.

Assistant county attorney Debra Roberson–Hoffmann was present at the meeting, and she and the President of the Board, Peter Sheets, suggested she should be present during any meeting between Wings and Dunlap. Roberson–Hoffmann characterized this suggestion as legal advice which she gave Dunlap in her capacity as assistant county attorney. Due to the hostility between Dunlap and Wings, Roberson–Hoffmann wanted to facilitate the meeting between them. She also wanted to be present in order to address any questions Dunlap had about the confidential nature of any of the records. Dunlap testified he left the March 28 meeting with the understanding his legal counsel, Roberson–Hoffmann, would be scheduling the appointment for Wings to examine records and he relied upon her to do so.

Wings called Dunlap on April 2 to schedule an appointment and Wings claims Dunlap told her she would have to arrange for Roberson–Hoffmann to be present when she

saw the records. Wings testified she called Dunlap the next day and stated she understood why he felt he would need legal counsel present and she thought it was a reasonable request. However, she claims she told Dunlap she felt he needed to take responsibility for scheduling the appointment.

Wings testified that between April 3 and April 19 she had not attempted to call either Dunlap or Roberson–Hoffmann to arrange a time to review the records. On Friday April 19, after no appointment had been scheduled, Wings called Dunlap and said she would be at his office to examine the records on Monday April 22. Wings went to the office on April 22 and was allowed to examine all of the job descriptions, ads, logs and applications she wanted to see.

When asked why a delay occurred in arranging a meeting for Wings to review the records, Roberson–Hoffmann accepted full responsibility for the delay and testified she "dropped the ball." She had been reminded by Dunlap to arrange the meeting but forgot to do so.

Wings called Dunlap's office on May 16 to again request to see documents but Dunlap was out of the office when she called. Dunlap attempted to return Wings' call on Thursday May 16 and Friday May 17, and Wings went to his office on May 21, 1991, to review records. Wings was given full access and an opportunity to review all of the documents she wanted to see.

Dunlap's secretary resigned during the summer of 1991 and Wings was interested in how this vacant position was to be advertised and filled. She went to Dunlap's office on Friday September 20, 1991, and requested to see records related to the position. Dunlap, as conservation director, spends a great deal of his time working outside of the office and was not present when Wings arrived on September 20. The staff members who were there attempted to determine if the requested records could be examined by Wings. They were concerned because some of the job applicants had requested anonymity and they sought legal advice from a board member. They were advised the records were confidential and Wings was not allowed to see them on that date. When Dunlap returned to the office on the following Monday, the records were made available to two friends of Wings whom she had arranged to have go to Dunlap's office and obtain them.

On November 19, 1991, Wings filed an action seeking injunctive relief and damages for Dunlap's conduct which was allegedly in violation of Iowa Code chapter 22. The district court found the delay in providing the records during the period from March 28 through April 22, 1991, was not justified pursuant to section 22.8(4) of the open records law and Dunlap had failed to make the records available 30 hours per week as required by section 22.4. The court enjoined Dunlap from further violations of the open records law, fined him $250 for each of two violations, and awarded Wings trial attorney's fees.

## II. CHAPTER 22—EXAMINATION OF PUBLIC RECORDS

Chapter 22 [1] is Iowa's freedom of information statute. *Head v. Colloton*, 331 N.W.2d 870, 873 (Iowa 1983). "Its purpose is 'to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.'" *Id.* at 873–74 (quoting *Iowa Civil Rights Commission v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981)).

Every person has the "right to examine and copy public records or the information contained therein." Iowa Code § 22.2(1) (1993).[2] However, the legislature has denoted numerous types of public records for which confidentiality shall be maintained. Iowa Code § 22.7. The Iowa Supreme Court has held employment applications are confidential records for which disclosure is not required. *See City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 899 (Iowa 1988).

---

1. Previously Iowa Code chapter 68A.

2. All references are to the Code of 1993.

## III. CONCLUSIONS

■ In determining if there was a violation· of chapter 22 we look to the shifting burden of proof set forth in section 22.10(2) and consider whether a preponderance of the evidence establishes Dunlap violated any provision of chapter 22. We have done so and reverse the trial court's finding of a violation of chapter 22 on two grounds. First, many of the records in question were confidential employment applications which were not subject to disclosure. *See City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 899 (Iowa 1988). Dunlap cannot be found to have violated chapter 22 because of a delay in providing records which were not ordinarily subject to public examination.

As an alternative basis for reversing the trial court's decision, we find Dunlap substantially complied with the dictates of chapter 22. In the context of Iowa's open meetings law, the Iowa Supreme Court has held when procedures are imposed on county governmental bodies the standard is substantial rather than absolute compliance. *See KCOB/KLVN, Inc. v. Jasper County Board of Supervisors*, 473 N.W.2d 171, 176 (Iowa 1991). In light of the similar purposes served by the open meetings and public records laws, we conclude the substantial compliance standard applies in this case and governs our review of Dunlap's conduct.

■ With respect to the request made on March 28, 1991, we conclude Dunlap substantially complied with Wing's request. Wings had publicly expressed concerns about possible illegalities in connection with the Board's hiring practices. Both the Board President and assistant county attorney had indicated legal counsel should be present when Dunlap and Wings met and the records were reviewed. Under the circumstances of this case it was not unreasonable for Dunlap to follow the advice of the assistant county attorney and rely on her representation she would arrange the meeting.

Wings testified she did not call Dunlap or Roberson–Hoffmann or visit Dunlap's office between April 3 and April 19. When she did appear at Dunlap's office on April 22, she was given full access to all records she wished to see. Whatever misunderstandings or miscommunications occurred between Wings, Dunlap and Roberson–Hoffmann, it is clear Dunlap was relying on the advice and representations of his counsel and, under those circumstances, substantially complied with chapter 22.

■ We also find Dunlap substantially complied with the provisions of section 22.4. That statute governs the number of hours during which public records will be available for examination. Dunlap's office was open from 8 a.m. to 4 p.m. on Monday through Friday. The record indicates he was a "working director" and, among other things, his job duties included oversight of a 1,000 acre park. Since his job required him to carry. out many of his responsibilities outside of the office, he was not always physically present at his office for at least 30 hours a week. However, he had secretarial support who would receive public inquiries and convey them to him when he returned to the office.

The trial judge was critical because Dunlap had not delegated some of his responsibilities as the custodian of the Board's public records. The evidence indicates the county attorney recommended to Dunlap in June 1991 he delegate such responsibilities to accommodate for the fact he was not always in the office. After he received this recommendation, Dunlap's secretary resigned. At the time of Wings' September 20, 1991, request for documents, his office was staffed with a temporary secretary. When a permanent secretary was hired in October 1991, Dunlap ensured she was adequately trained and aware of her responsibility for making public records available for examination.

■ Chapter 22 cannot be interpreted and applied in a vacuum. We must consider the fact some governmental bodies are small and are staffed by individuals whose work is conducted primarily outside of an office. Under such circumstances it may be more feasible for members of the public to call ahead and make appointments to review records. Wings testified she had called a week a head of time to make an appointment to review Dunlap's records in September 1990. On that occasion Wings was able to view the

records without delay and any alleged violation of chapter 22.

The record indicates Dunlap made good faith efforts to ensure public records were accessible and we find he substantially complied with the requirements of section 22.4. In finding substantial compliance with the requirements of chapter 22, we reverse the trial court's imposition of injunctive relief, damages and its award of attorney fees. In light of our reversal of the trial court's decision, Wings' request for appellate attorney fees is denied.

**REVERSED.**