# IN THE COURT OF APPEALS OF IOWA

No. 15-1837
Filed December 21, 2016


**JAMES W. OLINGER and LARRY C. MEYER,**
    Plaintiffs-Appellants/Cross-Appellees,

vs.

**ROBERT SMITH, WALTER UTMAN, GAYLORD PITT, HARRISON COUNTY, IOWA, and UTMAN DRAINAGE DISTRICT,**
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Harrison County, James M. Richardson, Judge.


The plaintiffs appeal various aspects of the district court's order and judgment on their claim the defendants violated the Iowa Open Meetings Act. The defendants cross-appeal. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


Jessica A. Zupp of Zupp & Zupp Law Firm, P.C., Denison, and Allen K. Nepper of Nepper Law Firm, Denison, for appellants/cross-appellees.

Sasha L. Monthei of Scheldrup Blades, Cedar Rapids, for appellees/cross-appellants.


Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

James Olinger and Larry Meyer appeal various aspects of the district court's order and judgment on their claim the trustees of the Utman Drainage District violated the Iowa Open Meetings Act (IOMA). The drainage district and its trustees cross-appeal. We affirm in part, reverse in part, and remand.

I.      **Background Facts and Proceedings**

In its order and judgment, the district court summarized the following relevant facts:

> [Olinger and Meyer] are residents of Harrison County, Iowa. . . . Robert Smith, Walter Utman, and Gaylord Pitt are elected members of the Harrison County Board of Supervisors who act as the trustees of the Utman Drainage District.
>
> Elizabeth Lenz has been the drainage clerk for the Utman Drainage District for more than [twenty] years. Ms. Lenz acted as a liaison between the trustees and legal counsel. She would gather information from legal counsel and pass it on to the trustees as issues arose. . . .
>
> During the fall of 2013, a levy became a hotly contested issue in Harrison County, Iowa. [Olinger and Meyer] in a different cause of action filed for a writ of mandamus. . . .
>
> On or about November 4, 2013, counsel for [the] plaintiffs sent a threatening letter to the [trustees]. This letter threatened certain legal ramifications if certain actions were not taken prior to November 15, 2013. . . .
>
> The Harrison County board of supervisors meets weekly . . . .
>
> At their weekly . . . meeting on November 7, 2013, the matter of the drainage district litigation came up. Based upon advice given by counsel to Ms. Lenz, it was determined any discussion of the litigation should not be in an open meeting. . . . [T]he trustees entered a closed session to discuss litigation for approximately [three] minutes. The subject discussed was the November 4, 2013 letter threatening legal action. . . . No specific action was discussed. As it pertains to the payment of court costs requested in the previous litigation, the transcript of the November 4 closed meeting session indicates that the court had not yet assess[ed] the cost and as a result, the trustees all agreed to wait on any action.
>
> Similarly, on November 14, 2013, the trustees went into closed session to discuss threatened litigation for approximately

[six] minutes. No specific action was discussed. Again, this was pursuant to legal advice given by counsel to the trustees through Ms. Lenz.

On November 25, 2013, Olinger and Smith filed a petition alleging both closed sessions were held in violation of IOMA, as provided in Iowa Code chapter 21 (2013). *Olinger v. Smith*, No. 14-0751, 2015 WL 1331269, at *1 (Iowa Ct. App. Mar. 25, 2015). Olinger and Smith then "filed a motion seeking an in camera inspection of the recording of the closed sessions." *Id.*; *see also* Iowa Code § 21.5(4) (providing for in camera inspection). After the inspection, the district court determined Olinger and Smith were entitled to access the recording of the November 7 meeting but the November 14 recording should not be released. *Olinger*, 2015 WL 1331269, at *1. Having found the recording from the November 7 meeting must be disclosed, the district court invoked Iowa Code section 21.6(3)(a) and ordered each trustee to pay a $100 fine. *Id.* The court later suspended the fine in the event each trustee purchased an "Open Meetings, Open Records" handbook. *Id.* Olinger and Smith filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), asserting the district court's order should have been limited to the in camera motion; the district court summarily denied the motion. Olinger and Smith appealed.

This court reversed on appeal, finding the district court erred by prematurely assessing damages without expressly determining whether the trustees knowingly violated IOMA, by failing to allow the trustees an opportunity to present defenses, by suspending the fine without statutory authority, and by failing to address whether Olinger and Smith were entitled to attorney fees. *Id.* at *3. Based on the trustees' admission counsel for the drainage district was not

present at either meeting, this court further clarified "a closed session under Iowa Code section 21.5(1)(c) requires the presence of counsel at the meeting in order to satisfy the requirement 'to discuss strategy with counsel.'" *Id.* at *7 (footnote omitted). On appeal, it is undisputed by the parties that counsel was not present during the November 7 and 14 gatherings.

Upon remand, trial was held. The district court's order did not explicitly state a violation of the act occurred. Instead, the district court found: (1) "a closed meeting occurred," (2) the trustees entered into the closed meetings on advice of counsel, (3) "the trustees intended to fully comply with all aspects of the open meeting law," (4) the "trustees substantially complied with the open meetings statute on both November 7 and 14," and (5) "[w]hether or not a violation occurred, the [trustees] ha[ve] met all burdens in establishing their actions were made in good faith in attempting to comply with the open meetings statutes." Having made these findings, the district court imposed a fine upon the drainage district—concluding the trustees were not individually liable based on their "good faith" defense—and taxed the drainage district with costs including plaintiffs' attorney fees, as reduced by the district court.

Following Olinger and Smith's rule 1.904(2) motion to amend or enlarge, the district court entered an amended ruling eliminating the fine imposed upon the drainage district. Olinger and Smith appeal; the drainage district and its trustees cross-appeal.

## II. Standards and Scope of Review

"Actions to enforce the open meetings law are ordinary, not equitable, actions." *Hutchison v. Shull*, 878 N.W.2d 221, 229 (Iowa 2016). "In such

actions, we accord a trial court's factual findings the same degree of deference we accord a jury's special verdict." *Id.* (citing Iowa R. App. P. 6.907). "Thus, factual findings by the trial court are binding if substantial evidence supports them." *Id.* "Substantial evidence supports a factual finding when the finding 'may be reasonably inferred from the evidence presented.'" *Id.* at 229–30 (quoting *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996)). Our review is for correction of errors at law. *See Tel. Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 533 (Iowa 1980).

We review the award of attorney fees for an abuse of discretion. *See Schumacher v. Lisbon Sch. Bd.*, 582 N.W.2d 183, 186 (Iowa 1998).

### III. Analysis

#### A. IOMA Violation

Iowa Code section 21.1 "seeks to assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." In furtherance of this purpose, "[a]mbiguity in the construction or application of [IOMA] should be resolved in favor of openness." Iowa Code § 21.1.

The initial burden rests with the party seeking judicial enforcement of IOMA to "demonstrate[] to the court that the body in question is subject to the requirements of [IOMA] and has held a closed session." *Id.* § 21.6(2). Once the claimant has done so, "the burden of going forward shall be on the body and its members to demonstrate compliance with the requirements of [IOMA]." *Id.*

There is no dispute the drainage district and its trustees are subject to the requirements of IOMA. The Iowa Code provides that "[m]eetings of governmental bodies," such as the drainage district, "shall be held in open session unless closed sessions are expressly permitted by law." *Id.* § 21.3. An "[o]pen session" is defined as "a meeting to which all members of the public have access." *Id.* § 21.2(3). The code, in turn, defines "[m]eeting" to mean

> a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action upon any matter within the scope of the governmental body's policy-making duties. Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter.

*Id.* § 21.2(2).

A closed session may lawfully be held under certain enumerated exceptions. *See id.* § 21.5. On the initial appeal, the exception forwarded by the drainage district was section 21.5(1)(c), which provides a closed session can be held "[t]o discuss strategy with counsel in matters that are presently in litigation or where litigation is imminent where its disclosure would be likely to prejudice or disadvantage the position of the governmental body in that litigation." However, the drainage district conceded no attorney was present at these meetings, a prerequisite this court determined was needed for section 21.5(1)(c) to apply. *Olinger*, 2015 WL 1331269, at *3.

There is no dispute the November 7 and 14 gatherings were "closed" to the public. Instead, the drainage district and its trustees argue the gatherings—even though closed—did not constitute "meetings" under section 21.2(2). They further argue they "substantially complied" with IOMA's requirements and thus no

violation occurred. Finally, the trustees argue, even if a violation did occur, they are not subject to damages based upon the defenses found in section 21.6, namely, that they "[h]ad good reason to believe and in good faith believed facts which, if true, would have indicated compliance with all the requirements of [IOMA]." Iowa Code § 21.6(3)(a)(2).

### B. Meeting

On appeal, the drainage district and its trustees first argue there was no meeting held within the statutory meaning of Iowa Code section 21.2. As an initial matter, we note neither the drainage district nor its trustees appealed the district court's implicit finding in its March 4, 2014 ruling that the November 7 and November 14 gatherings were meetings. *See generally Olinger*, 2015 WL 1331269, at *1.[1] However, this court vacated the district court's findings insofar as they exceeded the scope of the limited matter actually before the district court—whether the drainage district and its trustees were required to disclose the recordings of the two November gatherings. *Id.* at *8. Further, the issue was subsequently litigated before and decided by the district court in its September 29, 2015 order and judgment; thus, we will address this claim on its merits.

The district court found "[t]he Harrison County board of supervisors meets weekly" and "[t]he individual members of the Harrison County Board of Supervisors also serve as the trustees for the Utman Drainage District." The

---

[1] Olinger and Meyer contend this argument was not preserved because the drainage district and its trustees admitted the events at issue were meetings in their answer to the petition. Paragraph 13 of the petition states, "The meeting at the Board of Supervisors' meeting room on November 7, 2013 and November 14, 2013, constitute a 'meeting' under Iowa Code § 21.2(2)." This paragraph was denied by the drainage district and its trustees. We find the issue was preserved.

events at issue arose "[a]t their weekly Harrison County Board of Supervisors meeting."

The drainage district and its trustees contend this weekly, scheduled meeting was not a "meeting" under chapter 21 because there was no "deliberation or action" and "no intent to avoid the purposes" of IOMA. "Deliberation generally involves 'discussion and evaluative processes in arriving at a decision or policy.'" *Hutchison*, 878 N.W.2d at 232 n.1 (quoting *Hettinga v. Dallas Cty. Bd. of Adjustment*, 375 N.W.2d 293, 295 (Iowa 1985)). "[A] gathering may be 'purely ministerial' if members of a body assemble simply to receive information without discussing policy or intending to avoid the purposes of the open meetings law"; however, "ministerial activities may develop into deliberation if the members of a governmental body 'engage in any discussion that focuses at all concretely on matters over which they exercise judgment or discretion.'" *Id.* (citation omitted).

While the drainage district and its trustees contend no deliberation or action occurred, the district court found and the record supports that, at the November 7, 2013 meeting, "the trustees entered a closed session to discuss litigation for approximately [three] minutes"; the trustees discussed the letter received from Olinger and Meyer threatening legal action—specifically addressing who had received the letter; and "the trustees all agreed to wait on any action" with regard "to the payment of court costs requested in the previous litigation." The drainage district's own meeting notes indicate the trustees "discuss[ed] the litigation against the [drainage district]." The transcript from the closed session demonstrates the trustees discussed how to respond to the letter

threatening litigation and how to respond to the demand for payment of costs.[2] The trustees' deliberation and decision not to act was more than a gathering to "receive information" and constitutes a "deliberation or action" within the meaning of section 21.2(2).[3]

There is less evidence available regarding what occurred during the November 14 meeting. The drainage district's notes from the November 14 gathering indicate the trustees "entered into closed session to discuss the possible litigation against the [drainage] district," a description adopted by the district court in its ruling. It is apparent the trustees, in some manner, discussed the threatened litigation. Following the closed session, the trustees hired outside counsel for the drainage district.

The drainage district and its trustees reference numerous cases in support of their contention the gatherings did not constitute meetings—all of which are distinguishable. They rely on *Gavin v. City of Cascade*, 500 N.W.2d 729 (Iowa Ct. App. 1993). In *Gavin*, the district court found, and our court affirmed, that a genuine issue of fact existed as to whether a meeting was held when two council

---

[2] The trustees claim there is no indication they went into closed session to discuss the court costs. Contrary to this contention, the majority of the discussion held on November 7 pertained to the court costs, not the letter received from Olinger and Meyer. Further, Utman testified he believed it was appropriate for the trustees to go into a closed session to discuss the letter from Olinger and Meyer *and* the court costs from the previous litigation. Further, chapter 21 specifically precludes discussion of any topics in closed sessions that did not serve as a basis for entering into a closed session. *See* Iowa Code § 21.5(2) ("A governmental body shall not discuss any business during a closed session which does not directly relate to the specific reason announced as justification for the closed session."). Thus, by discussing the court costs, the trustees presumably intended it to serve as a basis for entering into a closed session.

[3] We note, however, while section 21.2(2) defines a "meeting," section 21.5(3) provides "[f]inal action by any government body on any matter shall be taken in an open session unless some other provision of the Code expressly permits such actions to be taken in closed session." Iowa Code §§ 21.2(2), .5(3).

members met at an excavation site with the excavator and contacted two other council members by phone before giving the excavator approval to conduct certain work at the city's expense. 500 N.W.2d at 730–31. Our court also affirmed the district court's finding no meeting had occurred on a separate occasion when there was never a majority of the council present, as statutorily required to constitute a meeting. *Id.* at 732. Finally, our court considered whether a meeting was held when three of the council members went to view some rock one of the council members was considering purchasing. *Id.* Our court found "no evidence any deliberation or action took place when the men met at the rock" *and* there was "no evidence of any intent to avoid the purposes of chapter 21." *Id.* This case is distinguishable because in *Gavin* the gathering was not a structured, routinely held meeting of the council where council business was discussed and action was taken. This was simply three council members viewing some rock in order to consider later whether a purchase should be made at some future date. *Id.*

Similarly, in *Dooley v. Johnson County Board of Supervisors*, No. 08-0195, 2008 WL 5234382, at *1 (Iowa Ct. App. Dec. 17, 2008), the Johnson County Board of Supervisors contracted with a party to study the issue of whether to develop a new road through part of Johnson County. Following a preliminary recommendation, the contractor met with the board members in groups of two to discuss the preliminary report and acquire their input. *Dooley*, 2008 WL 5234382, at *2. The court of appeals noted it was a close case but found no deliberation or action was discussed, as the gatherings simply provided the board members the opportunity to obtain information and clarification from

the contractor about the preliminary report. *Id.* at *4–5. However, the court of appeals noted it "believe[d] that the board's decision to review the draft in this fashion was a poor one," that the "purpose [of the gatherings] appears dangerously close to 'deliberation,'" and cautioned the board about its statutory obligations. *Id.* at *5. The court did not reach the issue of whether a majority of the board was present and whether there was any intent to avoid the purposes of IOMA. *Id.* at *4–5. Again, here, the trustees met and entered into closed sessions during routine meetings of the drainage district to discuss the pending litigation and demand for court costs; they were not simply gatherings to obtain information.

In *Hettinga*, 375 N.W.2d at 294, a majority of board members met privately with the county attorney prior to a scheduled meeting to discuss a zoning ordinance. In finding no "meeting" occurred, the court of appeals reasoned:

> All parties who were in that adjoining room testified that merits of the case were not mentioned and only the applicable law was discussed. It further does not appear that any member of the board intended to violated chapter 21. Based on this record, we hold that the provisions of chapter 21 were not violated because no deliberation or action regarding board policy-making occurred during the gathering. The gathering was solely for the purpose to elicit a clarification of a point of law from the county attorney.

*Hettinga*, 375 N.W.2d at 295. Again, here, this was not a circumstance in which a gathering occurred *prior* to a scheduled meeting. This *was* a scheduled meeting. The discussion was not with a county attorney for fact-gathering; it was a discussion of the board members about what action—if any—to take.

In *Mason v. Vision Iowa Board*, 700 N.W.2d 349, 356 (Iowa 2005), the Iowa Supreme Court determined no meeting had occurred because the

committee at issue had no authority to decide the issues at hand, only to make recommendations to the board about what course of action to take. Because the board was the actual decision maker, and the committee did not have or exercise any policy-making duties, no meeting was held. *Mason*, 700 N.W.2d at 357. This is not a circumstance in which the trustees were constrained to function only in an "advisory function," as was the case in *Mason*. *See id.* at 358.

Finally, the drainage district and its trustees rely upon *KCOB/KLVN, Inc. v. Jasper County Board of Supervisors*, 473 N.W.2d 171 (Iowa 1991). In *KCOB*, the claimants challenged the sufficiency of the notice of certain meetings. 473 N.W.2d at 173–75. Notice is not at issue here. The claimants also alleged a budget session constituted a meeting under chapter 21; but the supreme court noted the claimants failed to challenge the district court's finding that no policy-making occurred at the gatherings. *Id.* at 175. The claimants then challenged the method by which a closed session was held. *Id.* at 175-76. Notably, the dispute was not whether the closed session constituted a meeting. The supreme court affirmed the district court's finding the board "substantially complied" with its obligations under section 21.5(2) (providing the means by which a closed session can be held) and only "procedural irregularit[ies]" occurred. *Id.* at 176. Finally, the supreme court affirmed the district court's ruling the claimants otherwise failed to prove any other gathering—let alone meeting for statutory purposes— ever occurred. *Id.* at 176-78. Collectively, these cases do not support the drainage district and its trustees' contention that no meeting occurred.

Further, the Iowa Code defines "open session" to "mean[] a *meeting* to which all members of the public have access." Iowa Code § 21.2(3) (emphasis

added). Section 21.3 provides "[m]*eetings* of governmental bodies . . . shall be held in open session unless closed sessions are expressly permitted by law." *Id.* § 21.3 (emphasis added). Here, the trustees explicitly voted to hold closed sessions under section 21.5, which indicates their own determination that the gatherings constituted meetings.[4] Likewise, they recorded the sessions and kept meeting notes as required by section 21.5(4)(a) and provided notice of the meetings as required by section 21.4.

In its holding, the district court determined,

> It is clear from the record that defendants considered this gathering to be a meeting governed by the open meetings law. Their actions voting to close as well as keeping a record supports this conclusion. Decisions simply to wait or to further contact legal counsel were made. This Court concludes, as did the individual trustees, that a closed meeting occurred.

We find substantial evidence supports the district court's conclusion and affirm.

### C. Substantial Compliance

Having found a governmental body held meetings that were closed, the burden rests with the governmental body to demonstrate it satisfied the requirements of IOMA. *Id.* § 21.6(2). The trustees first argue they "substantially complied" with IOMA, noting the district court's repeated findings to that effect. We acknowledge the district court's finding of substantial compliance is inconsistent with its finding of a violation. Thus, we next consider whether the district court's finding of "substantial compliance" was correct.

---

[4] The trustees repeatedly contend there is no evidence they were trying to "avoid the purposes of this chapter." Iowa Code § 21.2(2). But these gatherings were held as standard, weekly meetings of the drainage district. There is no indication they were just gatherings for "purely ministerial or social purpose[s]" used as a means "to avoid the purposes" of IOMA, because it is facially apparent they were routine "gathering[s] . . . of a majority of the members of a governmental body where there [wa]s deliberation or action." *Id.*

Our supreme court first applied the "substantial compliance" standard in the IOMA context in *KCOB*. 473 N.W.2d at 176; *see also City of Postville v. Upper Explorerland Reg'l Planning Comm'n*, 834 N.W.2d 1, 9 (Iowa 2013). In *KCOB*,

> The deputy auditor, the secretary of the meeting, was asked to leave and then the Board voted to go into a closed session. Due to the deputy auditor's absence, no minutes of the vote of each member or the reason for holding the closed session were taken as required by chapter 21. A tape recorder, turned on before the [relevant] meeting started, revealed that the deputy auditor was asked to leave and that a vote was taken. The tape was played as evidence at trial. Although notice of the [relevant] meeting was posted, no one attended the meeting except Board members, the employee, and the deputy auditor. With the exception of the deputy auditor, no members of the public were unlawfully excluded from the closed meeting.

473 N.W.2d at 176. The supreme court "agree[d] with the trial court's finding that the Board was in substantial compliance with [IOMA]" as "the Board satisfied the statutory requirements but the deputy auditor was excused before the vote and could not record the minutes"; thus, only a "procedural irregularity occurred." *Id.* Here, two meetings were held, twice the trustees voted to go into closed session, and both times there was no statutory basis for closing the session. This was more than a "procedural irregularity," which resulted in the actual exclusion of persons from the meeting. While the trustees may well have been unaware that their actions violated IOMA, "[i]gnorance of the legal requirements" of IOMA is "no defense to an enforcement proceeding."[5] Iowa Code § 21.6(4). We

---

[5] The drainage district and its trustees also rely upon *Wings v. Dunlap*, 527 N.W.2d 407, 409 (Iowa Ct. App. 1994), where this court first applied the "substantial compliance" test in an Iowa Code chapter 22 (Open Records Act) challenge. Notably, the supreme court has yet to decide if the "substantial compliance" standard applies in the Open Records Act context. *See Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 462

determine the district court erred in finding the trustees substantially complied with the requirements of IOMA.

### D.      Good-Faith Defense

Iowa Code section 21.6(3)(a) provides "[a] member of a governmental body found to have violated [IOMA] shall not be assessed . . . damages if that member proves that the member" either "[v]oted against the closed session," "[h]ad good reason to believe and in good faith believed facts which, if true, would have indicated compliance with all the requirements of [IOMA]," or "[r]easonably relied upon . . . a formal opinion of . . . the attorney for the governmental body, given in writing, or as memorialized in the minutes of the meeting at which a formal oral opinion was given, or an advisory opinion of . . . the attorney for the governmental body, given in writing."  Accordingly, these defenses only come into play *after* a finding of a violation has been made.

Without specifically making a finding that IOMA had been violated, the district court concluded

> [The trustees] had good reason to believe and in good faith believed that they were in compliance with all the requirements of the open meetings law.  They had relied upon advice of legal counsel conveyed to them through clerk Elizabeth Lenz.  There is not a scintilla of evidence that anyone intended to violate the open meetings statute.  Rather, the evidence establishes that the supervisors did everything in their power pursuant to legal advice to comply with the open meetings statute.  This Court specifically finds that defendants substantially complied with all requirements of the open meetings statute.  The technical violation of the physical

(Iowa 2013) (finding no substantial compliance).  Regardless, in *Wings*, the dispute was over the approximate month delay the plaintiff faced before receiving "full access and an opportunity to review all of the documents she wanted to see."  527 N.W.2d at 409.  Based on the specific circumstances of that case, we determined the governmental party had substantially complied with its statutory obligations.  *Id.* at 410.  It does not prove analogous to our situation here, where the meetings were held in closed sessions without statutory justification.

absence of legal counsel does not weaken or diminish the good faith exhibited by [the trustees]. The Court specifically finds that the [trustees] have met their burden in showing both good faith and good reason to believe all requirements of the open meetings law had been complied with by the trustees.

Based on these conclusions—and despite its statement the trustees "substantially complied" with the code—the district court appears to have found a violation occurred but the trustees proved they had good reason to, and in fact did, act in good faith. *See* Iowa Code § 21.6(3)(a)(2). Olinger and Meyer dispute this finding, arguing the trustees did not have good reason to believe they were acting in compliance with chapter 21.

First, we note the code requires the individuals have "good reason to believe and in good faith believed *facts* if true, would have indicated compliance with all the requirements of [IOMA]." *Id.* (emphasis added). Here, no "facts" are proffered by the trustees. *See, e.g.*, *Hawkeye Commc'ns, Inc. v. Carlson*, No. 04-1674, 2005 WL 3940279, at *6 (Iowa Ct. App. Dec. 21, 2005).[6] They simply repeatedly contend they believed they were not in violation of chapter 21.[7] The only argument proffered in the record—though not in the parties' briefing—seems to have been the trustees' belief counsel did not need to be present for a closed session to be held. But this is not a "fact"; it is a misunderstanding of the law, and "[i]gnorance of the legal requirements of [IOMA] [is] no defense to an enforcement proceeding." Iowa Code § 21.6(4).

---

[6] In *Hawkeye Commc'ns*, the court found the good-faith defense was not met when the individual was aware of the change in circumstances by the time the meeting began, was advised of a legal opinion that the meeting violated chapter 21, and had been trained on what constitutes a violation of chapter 21 and the consequences for such a violation. 2005 WL 3940279, at *6.

[7] For instance, Smith vaguely testified he thought he was complying with chapter 21 and relied on advice of counsel.

Rather than discuss a "fact" that, if true, would have meant the trustees would not be assessed damages for a violation of the requirements of IOMA, the trustees[8] and the district court[9] invoke the trustees' reliance on the alleged legal advice of counsel. *See id.* § 21.6(3)(a)(2)–(3). Reliance on legal counsel, however, is a separate defense. *See id.* § 21.6(3)(a)(3). To apply, the legal advice of counsel must either be "given in writing" or "memorialized in the minutes of the meeting at which a formal oral opinion was given." *Id.* Neither applies here. The trustees did not receive a written opinion from counsel—any opinion they received was from Lenz who corresponded directly with counsel. Further, it is undisputed no counsel directly provided oral advice to the trustees at any time before or during the meeting. The defense in section 21.6(3)(a)(3) is thus not met.[10]

---

[8] At trial, Lenz testified she routinely gathered information from the attorney and passed it on to the trustees, including whether the trustees could lawfully enter into a closed session. Utman testified they relied upon Lenz for this information.

[9] Specifically, the district court ruled, "In the case at a hand, all evidence presented at trial indicates that the individual supervisors did their utmost to comply with the open meetings statute. Simply, the supervisors relied on the advice of legal counsel at all times."

[10] The trustees also rely upon *City of Riverdale v. Diercks*, 806 N.W.2d 643 (Iowa 2011). In *Diercks*, a violation of chapter 22 (Open Records Act), not chapter 21, was at issue. 806 N.W.2d at 645. Chapter 22 provides "[g]ood-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation of this chapter" when "the purpose of the delay" is to "seek an injunction," "determine whether the lawful custodian is entitled to seek an injunction," "determine whether the government record . . . is a public record," or "determine whether a confidential record should be available for inspection." Iowa Code § 22.8(4). Chapter 22 does not comparably require the same belief in a fact that, if true, would have brought the government actors in compliance with the code section. In *Diercks*, the court considered whether reliance on advice of counsel could establish subjective good faith on the part of the government actors. 806 N.W.2d at 657. Again, in chapter 22, "good faith" is a requirement that is paired with a certain action, like seeking an injunction. Iowa Code § 22.8(4). Under chapter 21, the "good faith" at issue is a "good faith belie[f]" in a fact or facts. *Id.* § 21.3(a)(2). It appears the trustees are attempting to escape the requirements of section 21.6(3)(a)(3)—which are not met in this matter—by using the advice of counsel to satisfy section 21.6(3)(a)(2)'s requirement for a "fact."

The district court also noted the trustees did not have the benefit of this court's previous decision when they went into closed session. The district court concluded, "The presence of legal counsel requirement was contrary to the advice given to the trustees by their own legal counsel. It is simply not proper to hold the trustees accountable for . . . a legal interpretation of [IOMA] that did not exist at the time the choice to go into closed session was made." A party may rely "upon a decision of a court," *id.* § 21.6(3)(a)(3), but where a potential ambiguity exists, a governmental body "is authorized to bring suit . . . to ascertain the propriety of [holding a closed meeting], or seek a formal opinion of . . . an attorney of the governmental body," *id.* § 21.6(4). Here, the trustees did not rely upon a decision of a court or the requisite written opinion of counsel. This court's subsequent decision on the section does not provide the trustees a defense of good faith. *See id.* ("Ignorance of the legal requirements of this chapter shall be no defense . . . .").

There is no doubt the district court believed the trustees' actions were well-intended. But good intentions do not equate to a "good reason to believe" and "good faith belie[f]" in "facts" that, "if true, would have indicated compliance with all the requirements of this chapter." *Id.* § 21.6(3)(a)(2); *see also Hawkeye Commc'ns*, 2005 WL 3940279, at *6 ("[E]ven if [the individual] honestly believed he was acting in compliance with chapter 21, he did not have good reason to hold such a belief.").

### E.    Removal

Olinger and Meyer allege the district court should have removed the trustees from office pursuant to section 21.6(3), which provides:

> Upon a finding by a preponderance of the evidence that a governmental body has violated any provision of this chapter, a court:
>
> . . . .
>
> d. Shall issue an order removing a member of a governmental body from office *if that member has engaged in a prior violation of this chapter for which damages were assessed against the member during the member's term.*"

(Emphasis added.) There is no evidence in the record before us of any judicial determination of a "prior violation" by the trustees for which damages were assessed. The fact Olinger and Meyer allege more than one violation in this action does not satisfy the requirement for a "prior violation."

**F.    Damages**

Olinger and Meyer seek the imposition of maximum statutory damages against the trustees. *See* Iowa Code § 21.6(3)(a) (instructing that "[u]pon a finding by a preponderance of the evidence that a governmental body has violated any provision of this chapter, a court . . . [s]hall assess each member of the governmental body who participated in its violation damages in the amount of not more than five hundred dollars and not less than one hundred dollars. However, if a member of a governmental body knowingly participated in such a violation, damages shall be in the amount of not more than two thousand five hundred dollars and not less than one thousand dollars."). We find the record is sufficient to address this on appeal and conclude the record does not support a finding of a knowing violation by the trustees. As noted by the district court, the trustees communicated with counsel, endeavoring to comply with IOMA. While the trustees have not met the burden of proving a good-faith defense, their efforts to remain in compliance with IOMA mitigate against a finding of a knowing

violation and toward an assessment of the lowest damage award provided under section 21.6(3)(a). Accordingly, we assess a $200 total fine against each trustee for the two violations.

### G. Attorney Fees

The parties dispute the attorney fees awarded by the district court. The drainage district and its trustees contend the district court's finding of substantial compliance means no violation of chapter 21 occurred; thus, fees should not have been awarded. Olinger and Meyer contend the district court abused its discretion in reducing the amount of fees awarded. For the reasons stated above, we find the trustees were in violation of IOMA and thus the award of fees was mandated. *See* Iowa Code § 21.6(3) ("Upon a finding by a preponderance of the evidence that a governmental body has violated any provision of [IOMA], a court: . . . b. Shall order the payment of all costs and reasonable attorney fees in the trial and appellate courts to any party successfully establishing a violation of this chapter.").

At trial, Olinger and Meyer sought $6430 in appellate fees—for approximately 35 hours billed at $175 an hour—and $5440.83 in trial fees. The record did not indicate the trial counsel's hourly rate. The district court noted Olinger and Meyer were charged $1000 for trial preparation and $1200 for trial. The district court concluded trial—which lasted three hours—and trial preparation should have required a total of six hours billed. The district court also determined a reasonable fee was $100 per hour and adjusted the appellate fees to $4106.96 and the trial fees to $3940.83. Olinger and Meyer contend this adjustment was an abuse of discretion.

In setting reasonable attorney fees, courts consider the following factors:

> [T]he time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.

*Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832–33 (Iowa 2009) (alteration in original). The district court did not explicitly consider the attorney's standing and experience or the customary charges for similar services. *See id.* at 833 ("[D]etailed findings of fact with regard to the factors considered must accompany the attorney fee award."). However, we note the hours billed and the rate applied for building, prosecuting, and appealing this case were not excessive. Further, cases based on IOMA are not run-of-the-mill cases, and the plaintiffs' attorneys obtained favorable results. We reverse the district court's downward adjustment of the fee total and award the full amount requested by Olinger and Meyer.

### H.     Appellate Attorney Fees

Olinger and Meyer seek and are entitled to appellate attorney fees. *See* Iowa Code § 21.6(3)(b). Based on the affidavits submitted and the above consideration of the applicable factors, which we find equally applicable here, we award Olinger and Meyer $13,037.22 in appellate attorney fees.

### IV.     Conclusion

We affirm the district court's finding the trustees violated IOMA. We reverse the district court's finding the trustees met their burden to prove a good-faith defense. We, therefore, assess a $200 total fine against each trustee for the two violations. We further reverse the district court's downward adjustment of the attorney fees requested at trial and award the full amount sought by Olinger

and Meyer.  We further award Olinger and Meyer appellate attorney fees to be jointly and severally paid by the trustees.  We remand for an entry of judgment by the district court consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**