# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0750
Filed May 13, 2026

————————————

**Jeremy Chedester and Chedester Properties, LLC,**
Plaintiffs–Appellants,
v.
**City of Newton, Iowa,**
Defendant–Appellee.

————————————

Appeal from the Iowa District Court for Jasper County,
The Honorable Terry Rickers, Judge.

————————————

**REVERSED AND REMANDED**

————————————

Alan R. Ostergren of Alan R. Ostergren P.C., Des Moines,
attorney for appellants.

Matthew S. Brick of Brick Gentry, P.C., West Des Moines,
attorney for appellee.

————————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J. Dissent by Chicchelly. P.J.

**LANGHOLZ, Judge.**

"To assist us in moving forward, my client requests pursuant to Iowa Code Chapter 22 that we be provided a copy of all communications, whether by letter, email, text message, or other form, between [a property owner] or his representatives and any city employee, officer, or representative." So wrote an attorney for Jeremy Chedester to the city attorney for the City of Newton in late April 2024. When the City did not provide any records in response, Chedester sued the City under chapter 22—Iowa's open-records statute. But the district court held that Chedester's claim failed as a matter of law because he never made "a proper request for records from the City under Iowa Code § 22.4" and thus granted the City summary judgment.

Chedester appeals, arguing that the court erred in ruling that he never made a proper open-records request. We agree. Section 22.4 permits a person to request public records from a government body "[i]n person, . . . [i]n writing, by telephone, or by electronic means." A government body cannot limit that statutory right by requiring a request to be submitted on a particular form or to a particular official or employee. Nor can a government body ignore an open-records request submitted to its city attorney just because it has delegated responsibility for implementing its open-records requirements to other officials or employees. And so, the district court erred in holding that Chedester failed to make a proper open-records request to the City. We decline the City's request to affirm on the alternative ground that it did not refuse the open-records request. At this stage of the proceeding, we cannot say as a matter of law that the City's delay in providing records until 140 days after it was served with this suit and 231 after the original request was not a refusal. We thus reverse the district court's grant of summary judgment and remand for further proceedings.

# I. Background Facts and Proceedings

Chedester[1] owned a building in downtown Newton that shared a common wall with a neighboring property. In May 2021, the City sued Chedester, seeking abatement of the conditions at the building. *See* Iowa Code § 657A.2 (2021). And over two years later, the parties reached a settlement agreement that apparently included Chedester's promise to demolish the building.

But by April 2024, the building had not yet been demolished. Late that month, Chedester met with the owner of the neighboring property that shared the wall with his building. The next day, on April 24, Chedester's attorney emailed the city attorney, raising two issues.[2] First, he asked a question unrelated to this appeal. Then, he wrote:

> Second, it is obvious that [the neighboring property owner] has received certain assurances from the city administrator or other city staff about what will or will not happen with the common wall. As you know, the repair obligations for a common wall are shared between the property owners. To assist us in moving forward, my client requests pursuant to Iowa Code Chapter 22 that we be provided a copy of all communications, whether by letter, email, text message, or other form, between [the neighboring property owner] or his representatives and any city employee, officer, or representative. This request specifically includes communications with your office.

The next day, the city attorney replied. His email began, "I was asked to provide the following response to your email from yesterday." In addition

---

[1] For readability, we do not distinguish between Jeremy Chedester and Chedester Properties, LLC. Both the human and the entity are parties to this open-records case, and their positions are aligned here. The record contains conflicting assertions—and no evidence—about the ownership interests of each in the building.

[2] Both Chedester's attorney and the city attorney represented their clients in the abatement suit and in this open-records suit—in the district court and now on appeal.

to answering Chedester's attorney's other question and closing with several requests from "the City" about the building,[3] the city attorney wrote: "No assurances have been made to the [property owners] other than their northern wall will be left in a condition that complies with the adopted codes for the City." The city attorney did not attach any responsive records. And Chedester's attorney did not reply to the city attorney reiterating the request.

In early July—more than two months after the email—Chedester sued the City, claiming that it had "refused to produce the requested records by the communication by the city attorney on April 25, 2024, and by its unreasonable delay in producing the records." He sought an order requiring production of "the withheld records," an injunction prohibiting further violations of chapter 22, a civil penalty, and attorney fees. *See* Iowa Code § 22.10(3)(a)–(c) (2024). The City accepted service of the suit a couple weeks after that, on July 24.

More than four months later—on December 11—the City provided records responsive to Chedester's request to his attorney. The City then moved for summary judgment on two grounds. First, it argued that Chedester's claim was moot because it had provided the requested records. Second, the City argued that its delay in producing the records was not unreasonable and thus was not a refusal to produce the records.

The district court rejected the City's argument that its production of the records mooted the case. *See Belin v. Reynolds*, 989 N.W.2d 166, 171

---

[3] The requests included: "Additionally, at the time the demolition is completed, the City is requesting that the wall portion of the property be directly quit-claim deeded to [the neighboring property owners] while the remainder is deeded to the City. Let us know how we might assist in making this possible. The City again asks that your client complete the demolition now."

(Iowa 2023) ("Although mootness prevents the issuance of a court order *to produce* the already-produced records, mootness would not bar any other relief that may be available under the [open-records] Act, e.g., attorney fees incurred in filing suit to compel production."). The court did not address the City's alternative argument that its delay was reasonable. Instead, the court concluded that the email from Chedester's attorney to the city attorney did "not amount to a proper request for records from the City under Iowa Code § 22.4" The court reasoned:

> Chedester failed to utilize the City's publicly available open records request form or any of the other methods the City makes publicly available for these requests, thus leaving the custodian of the requested records unaware of Chedester's request. Chedester failed to submit the request to the 'lawful custodian' of the records, as the only request for records was sent to [the city attorney], who is not the lawful custodian of the records under the statute.

And based on its conclusion that "the City cannot be said to have 'refused' to share documents that were never properly requested," the court granted the City summary judgment on Chedester's open-records claim.

Chedester now appeals.

## II.    Proper Open-Records Requests under Iowa Code Chapter 22

We review the district court's summary-judgment ruling in this open-records case under Iowa Code chapter 22 for correction of errors at law. *See Kirkwood Inst. Inc. v. Sand*, 6 N.W.3d 1, 7 (Iowa 2024). The court granted the City summary judgment because the court concluded as a matter of law that the April 2024 email from Chedester's attorney to the city attorney was not "a proper request for records from the City under Iowa Code § 22.4." So we start with the statute's text.

5

A person may exercise the statutory rights "to examine and copy a public record," Iowa Code § 22.2(1), "[i]n person, . . . [i]n writing, by telephone, or by electronic means," *id.* § 22.4. To facilitate those four ways of requesting public records, the statute clarifies when in-person requests can be made. *See id.* § 22.4(1). And as for written, telephone, or electronic requests, it mandates that "[t]he lawful custodian of the records shall post information for making such requests in a manner reasonably calculated to apprise the public of that information." *Id.* § 22.4(2). Another provision further protects the right to make those written, telephone, or electronic requests by prohibiting the lawful custodian from requiring a person to come in person to make the request or receive the record. *See id.* § 22.3(1) ("The lawful custodian shall not require the physical presence of a person requesting or receiving a copy of a public record and shall fulfill requests for a copy of a public record received in writing, by telephone, or by electronic means.").

Of course, all these rights apply only to "public records." *See id.* §§ 22.2, .3, .4; *see also id.* § 22.1(3) (defining "public records" to include, among other things, "all records, documents, tape, or other information, stored or preserved in any medium, of or belonging to this state or any county, city, township, school corporation, [or] political subdivision"). So the statutory duty to comply with requests for those public records applies only to their "lawful custodian," which is generally—with other nuances not relevant here—"the government body currently in physical possession of the public record" or the "government body owning that record" if the record is "in the physical possession of persons outside" the government body. *Id.* § 22.1(2). And "[e]ach government body shall delegate to particular officials or employees of that government body the responsibility for implementing the requirements of this chapter and shall publicly announce the particular

officials or employees to whom responsibility for implementing the requirements of this chapter has been delegated." *Id.*

Here, Chedester requested "a copy of all communications, whether by letter, email, text message, or other form, between [the neighboring property owner] or his representatives and any city employee, officer, or representative," including "any communications with [the city attorney's] office." No doubt, these are all records "of or belonging to" the City. Iowa Code § 22.1(3)(a). The City is a governmental body subject to chapter 22. *See id.* § 22.1(1) (defining "government body" to include "any . . . city"). And nobody disputes that the City was in physical possession of, or owned, the records—indeed the City eventually produced the requested records. Chedester's request was thus for public records, and the City was the legal custodian of those records.

So too did Chedester make this request for public records in one of the four ways authorized section 22.4. His attorney's email was a request "by electronic means." *Id.* § 22.4(2). And it was sent to the legal custodian of the public records—the City—by sending it to the city attorney. *See id.* § 22.1(2). Chedester thus made a proper records request under section 22.4. As the lawful custodian, the City was required to fulfill the request. *See id.* § 22.3(1). The district court's contrary conclusion was error.

The City defends the court's ruling with two arguments. First, it argues that the email was an improper electronic request because it was not "made through a public records form," as required by "the City's Open Records Policy." According to the City, under "Iowa Code section 22.4, records requests made by electronic means must be made pursuant to the directions posted by the lawful custodian of those records." The parties fight about whether the City's open-records policy and ordinances were properly

7

part of the summary-judgment record. But we need not wade into that fight because even assuming the City's policies did purport to require electronic requests to be submitted on a specific public record form, that is irrelevant to whether Chedester's electronic request was proper under section 22.4.

Nothing in section 22.4 authorizes a government body to require record requests to be submitted on a specific form. To the contrary, it broadly permits a person to make requests in four different ways—even just orally, as a request would be when made "[i]n person" or "by telephone."[4] Iowa Code § 22.4(2). And section 22.3(1) further protects those rights by mandating the lawful custodian to "fulfill requests for a copy of a public record received in writing, by telephone, or by electronic means" and prohibiting the lawful custodian from imposing the added requirement of "physical presence." *Id.* § 22.3(1). True, section 22.4 requires the "lawful custodian" to "post information for making such requests in a manner reasonably calculated to apprise the public of that information." *Id.* § 22.4(2). But that only imposes a duty on the lawful custodian to inform the public about the options for requesting public records. We see no basis from that text to imply authorization for a government body to restrict those rights to request records by requiring a specific form.

The City also argues that Chedester's request was not proper because it "was made directly to the City Attorney, not the designated custodian" under the City's open-records policy and ordinances: the city clerk. We again sidestep the parties' fight about the factual record supporting the City's assertions about its policy and ordinances. Even assuming that Chedester's record request should have been made to the city clerk under the City's open-

---

[4] Although it seems unlikely to be common, a person could presumably also make an oral request "by electronic means" by submitting an audio recording electronically.

record policy and that the City delegated responsibility for implementing the requirements of chapter 22 to the city clerk, that does not mean Chedester's request was improper under section 22.4.

True, an open-records request must be made to the lawful custodian for chapter 22's requirements to kick in. *See Teig v. Chavez*, 8 N.W.3d 484, 498 (Iowa 2024) (rejecting a claim of undue delay in producing records that were "never requested"). And the City—like all government bodies—is required to "delegate to particular officials or employees . . . the responsibility for implementing the requirements of" chapter 22 and to "publicly announce the particular officials or employees to whom" it delegated that responsibility. Iowa Code § 22.1(2). But complying with this duty to ensure that one or more humans is responsible for implementing the City's other open-records duties does not absolve the City of those other duties under the statute. The City—not the designated officials or employees, as the City contends—remains the lawful custodian of the public records it owns or possesses. *See id.* So the relevant question here is whether the City received the request—not whether the city clerk received it.

Chedester made his request to the City when his attorney emailed the city attorney. A city attorney is an agent of a city. *See Dillon v. City of Davenport*, 366 N.W.2d 918, 923–24 (Iowa 1985). And the supreme court has "long recognized the general rule that notice to an agent is notice to a principal if the agent was acting within his duties," including agents of government bodies. *Meredith Outdoor Advert., Inc. v. Iowa Dep't of Transp.*, 648 N.W.2d 109, 114 (Iowa 2002); *see also Vermeer v. Sneller*, 190 N.W.2d 389, 393–94 (Iowa 1971). What's more, the summary-judgment record leaves no dispute that the city attorney was acting on behalf of the City in his email exchange with Chedester's attorney. He said that he "was asked to provide

the following response to your email from yesterday." And he communicated multiple requests directly from the City, including writing: "The City again asks that your client complete the demolition now."

The City cites no precedent interpreting chapter 22 as it urges. We too have found none. And we see nothing in the text of sections 22.1(2), 22.3, or 22.4 that implies the City's delegation of open-records-implementation responsibility to the city clerk means that the City can ignore—rather than fulfill—open-records requests sent to its other employees or officials.[5] Indeed, given a city attorney's role in assisting a city in enforcing and complying with the law—including its requirements under chapter 22—it would be especially inappropriate to conclude that a city should be excused from responding to an open-records request sent to the city attorney. *See, e.g.*, Iowa Code § 22.10(4) (providing that "[i]gnorance of the legal requirements of this chapter is not a defense to an enforcement proceeding" and authorizing, among other things, "[a] lawful custodian or its designee in doubt [about certain actions] . . . to seek an opinion of . . . the attorney for the lawful custodian, to ascertain the legality of any such action"); *id.* § 123.56 (authorizing city attorney to enforce certain state alcohol regulation laws against bars); *id.* § 801.4(12) (noting a city attorney's role as "prosecuting attorney" for municipal ordinance violations).

The district court erred in granting the City summary judgment on the ground that Chedester never made a proper open-records request to the City. So we cannot affirm the summary-judgment ruling on this ground.

---

[5] Still, whether a lawful custodian receives a request through a government official or employee other than the person designated by the lawful custodian to receive requests may well be an appropriate factor to consider in deciding whether the lawful custodian has unreasonably delayed in responding to the request.

## III. Reasonableness of the City's Delay in Responding to the Request

The City next argues that we can still affirm the district court's grant of summary judgment because Chedester's claim that the City refused to produce the public records fails for an alternative reason: the City's delay in producing the records requested by Chedester was not unreasonable. Because the City urged this ground for summary judgment in the district court, it is preserved for our review even though the court did not rule on it. *See Rivera v. Clear Channel Outdoor, LLC*, 7 N.W.3d 734, 739 (Iowa 2024).

"Any aggrieved person ... may seek judicial enforcement of the requirements of [chapter 22] in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances." *Id.* § 22.10(1). The plaintiff must show "that the defendant is subject to the requirements of this chapter, that the records in question are government records, and that the defendant refused to make those government records available for examination and copying." *Id.* § 22.10(2). If the plaintiff succeeds, the burden shifts to the defendant to show compliance with the chapter—such as an applicable confidentiality provision covering the record. Iowa Code § 22.10(2); *see also Belin*, 989 N.W.2d at 173.

Our supreme court has held that a person may show a lawful custodian's refusal by an express statement of the custodian "that it won't produce records" or by evidence of the custodian's actions "showing that it won't produce records." *Belin*, 989 N.W.2d at 174. And that "second kind of refusal—an implied or 'silent' refusal—can be shown through an unreasonable delay in producing records." *Id.* The court further explained:

> Extensive delay may—on its own—establish an implicit refusal. But other evidence may also be relevant when deciding whether, in the words of the statute, the defendant *refused* to make the government records available. Relevant inquiries may include: (1) how promptly the defendant

acknowledged the plaintiff's requests and follow-up inquiries, (2) whether the defendant assured the plaintiff of the defendant's intent to provide the requested records, (3) whether the defendant explained why requested records weren't immediately available (e.g., what searches needed to be performed or what other obstacles needed to be overcome), (4) whether the defendant produced records as they became available (sometimes called "rolling production"), (5) whether the defendant updated the plaintiff on efforts to obtain and produce records, and (6) whether the defendant provided information about when records could be expected.

*Id.* at 175 (cleaned up).

When considering these refusal-by-unreasonable-delay claims on a lawful custodian's motion for summary judgment, a court must decide whether the plaintiff has "presented enough evidence to permit a factfinder to conclude that" the custodian's "delay was unreasonable." *Kirkwood*, 6 N.W.3d at 10; *see also* Iowa R. Civ. P. 1.981. The evidence must be viewed in the light most favorable to the plaintiff. *See Teig*, 8 N.W.3d at 499. But if "no reasonable mind could differ on how the factual issues should be resolved—and the law applied to those facts compels judgment for the moving party—summary judgment must be granted." *In re Est. of River*, 6 N.W.3d 13, 17–18 (Iowa Ct. App. 2024).

The reasonableness of the lawful custodian's delay "is often a fact question." *Teig*, 8 N.W.3d 484 at 499; *cf. Kirkwood*, 6 N.W.3d at 10 ("Whether a party's conduct is reasonable, we have said, is usually a fact question." (cleaned up)). The supreme court thus reversed a grant of summary judgment, holding that "an issue of fact exist[ed] as to whether" a government body "unreasonably delayed in providing" a specific public record when the record was responsive to the original request but omitted from the government body's pre-suit response, the suit expressly identified the record as improperly withheld, and the governmental body "still didn't

produce the [record] until it responded to [the plaintiff's] discovery requests in the lawsuit—106 days after [the plaintiff] filed its petition and 216 days after the open records request." *Kirkwood*, 6 N.W.3d at 10. So too did the court reverse summary judgment when a government body did not provide records responsive to a request until receiving them "through discovery" in the open-records case "more than ninety days" after the request without any indication that the government body kept the plaintiff "apprised of any updates" in the interim.[6] *Teig*, 8 N.W.3d at 499. The court reasoned that "the district court—as the fact-finder—should address whether the delayed receipt of the [requested] records was an unreasonable delay in violation of chapter 22." *Id.* at 499–500.

Still, in that same case, the court also held that summary judgment was properly granted on a claim of unreasonable delay for a record produced 41 days after it was requested—when the government body "responded to [the plaintiff's] request the day after receiving it, provided multiple updates, and estimated when the documents may be ready." *Id.* at 498. And the court similarly affirmed summary judgment on a claim that a record provided seven days after it was requested was an unreasonable delay, reasoning that the plaintiff's "demand for instantaneous compliance ignores the express language of chapter 22" when the government body needed to determine whether the record was confidential and could be made available. *Id.*

Following this governing precedent, we agree with Chedester that he has generated a fact question as to whether the City unreasonably delayed in providing records responsive to his request in violation of chapter 22. He

---

[6] The request was made while the open-records case was already pending, and the refusal-by-delay claim for the request was not asserted until an amended petition that was filed after the government body produced the record. *See Teig*, 8 N.W.3d at 489.

presented evidence that he made his request for public records on April 24. The City replied to his request the next day with an ambiguous statement and no responsive records or clarifying questions. Chedester then sued, putting the City on notice that he had made a request and had not received any responsive records no later than July 24 when it accepted service of the suit. Indeed, in its district-court briefing, the City asserted, "Once the lawsuit was filed, the City recognized that [Chedester's] counsel's email to the City Attorney was intended as a records request." Yet the City did not provide records responsive to the request until December 11—140 days after it was served with this suit and 231 days after receiving Chedester's request. These are similar facts—indeed, showing longer delays—as the prior cases in which the supreme court held that summary judgment was improper. *See Kirkwood*, 6 N.W.3d at 10; *Teig*, 8 N.W.3d at 499–500. And they are far removed from the routine open-records conduct that the court has held "does not rise to the level of undue delay" as a matter of law. *Teig*, 8 N.W.3d at 498.

To be clear, we hold only that Chedester has presented sufficient evidence to survive summary judgment. We express no opinion whether the City's conduct was an unreasonable delay in producing the requested records that amounts to a refusal. The supreme court has "declined to set an exact deadline for 'undue delay.'" *Id*. at 499. And while "[e]xtensive delay may— on its own—establish an implicit refusal, . . . other evidence may also be relevant." *Belin*, 989 N.W.2d at 175. Thus, the district court must make that finding in the first instance based on the full factual record developed by the parties at trial.

Because we cannot affirm the summary-judgment ruling on this alternative ground either, we reverse and remand for the district court—as

fact-finder—to decide whether the City unreasonably delayed in providing records responsive Chedester's request in violation of chapter 22.

**REVERSED AND REMANDED.**

Buller, J., concurs; Chicchelly, P.J., dissents.

**CHICCHELLY, Judge** (dissenting).

A request to exercise the right to examine and copy public records must be made to the lawful records custodian. *See* Iowa Code § 22.4 (2024). The majority finds that an electronic request for public records sent to the City's agent suffices. I disagree.

Section 22.1(2) defines "lawful custodian" as "the government body currently in physical possession of the public record." But it also requires that each government body must "delegate to particular officials or employees of that government body the responsibility for implementing the requirements of this chapter" and publicly announce those to whom the tasks have been delegated. *Id.* § 22.1(2); *see, e.g.*, *Carver-Kimm v. Reynolds*, 992 N.W.2d 591, 594, 599 (Iowa 2023) (stating that the employee tasked with answering public record requests for the Iowa Department of Public Health was custodian of its records); *Wings v. Dunlap*, 527 N.W.2d 407, 408 (Iowa Ct. App. 1994) ("Defendant Rod Dunlap was employed as the Conservation Director for Johnson County and was the lawful custodian for the records of the Johnson County Conservation Board . . . ."). In addition, section 22.4(2) states that the records custodian "shall post information for making [electronic] requests in a manner reasonably calculated to apprise the public of that information." Iowa Code § 22.4(2). Read together, the statute requires that each government body create a procedure for requesting public records and communicate it to the public. Requiring a government body to honor requests made to any agent or employee by any manner makes those provisions meaningless.

The district court noted that the City publicized how to request public records. It named the employees responsible for certain records: the police chief for police records, the fire chief for fire records, the library director for

library records, and the city clerk for all other city records. Its website lists methods for requesting public records requests, which include submitting an online form and emailing city hall. Rather than requesting the records from the named official or by a listed method, Chedester sent a single email to an attorney from an outside firm who serves as legal counsel to the City. After the City's attorney replied, Chedester never followed up or requested records via a method provided by the City.

Chedester bears the burden of showing that the City refused a request for public records, and he has not shown that a request for records in an email to the City's attorney or other agent amounts to a request under chapter 22. Because I do not believe that Chedester has shown that the City refused a request for public records under chapter 22, I respectfully dissent.